61 So.2d 175 (1952)
BRUCE'S JUICES, Inc. et al.
v.
KING et al.
Supreme Court of Florida, Special Division B.
July 18, 1952.
Rehearing Denied October 14, 1952.
Hall & Farnsworth, Tampa, for appellants.
Lewis W. Petteway, Tallahassee, for Florida R. & Public Utilities Commission.
John M. Allison of Macfarlane, Ferguson, Allison & Kelly, Tampa, for Central Truck Lines, Inc.
Milam, McIlvaine, Carroll & Wattles and Wayne K. Ramsey, Jr., Jacksonville, for Great Southern Trucking Co., appellees.
PER CURIAM.
Affirmed.
SEBRING, C.J., and ROBERTS and MATHEWS, JJ., and FUTCH, Associate Justice, concur.

On Rehearing.
ROBERTS, Justice.
This is an appeal to review a final decree of the Circuit Court of Hillsborough County, in Chancery. The suit was prosecuted by Bruce's Juices, Inc., together with certain intervenors joining later, against the Florida Railroad and Public Utilities Commission, to determine and protect by injunction, an arrangement whereby plaintiffs below used certain trucks in the operation of their business without authorization *176 from the defendants, who are appellees here. The latter contend that the arrangement was an unauthorized use and sought relief by injunction to prevent it. After extensive pleading, stipulation and a pre-trial conference, the issues were made up and the cause came on for trial before one of the Judges of said Court, who personally heard the witnesses.
At the conclusion of the trial a final judgment was entered which set forth in detail the history and determination of facts, pertinent parts of which are as follows:
"The plaintiff is engaged in the business of canning, concentrating and processing fruits and vegetable. Its major products are canned citrus juices and citrus feeds which are sold directly to wholesalers and grocers in communities throughout the country, sometimes in carload lots and at other times in less. Although the major portion of plaintiff's products is transported by what is termed certificated carriers, it frequently and regularly uses leased trucks and equipment from various individuals for the transportation of a portion of its products in interstate commerce, the method of operation being substantially as follows. Many trucks, operated by the owner as the driver in some instances, and in others operated by an employee of the owner, bring a truck load of merchandise from various parts of the country to Tampa. When this truck load is delivered at its destination here plaintiff then enters into what is termed a lease agreement for a single or one-way outbound trip with the owner of the truck, where the driver is the owner or with the driver as agent of the owner, where the driver is an employee of the owner, whereby the truck is leased to the plaintiff for the estimated duration of the trip to deliver the plaintiff's products to its consignee and the driver is hired by the plaintiff for the same period of time and the lease agreement coming to an end when the merchandise is delivered to the consignee and the owner of the truck is then, of course, free to make other arrangements for the use of his truck. The basis or pay for transportation is on a per diem day for the use of the truck and, likewise, the driver is paid on a per diem day. The driver is paid separately and is carried on the payroll of the plaintiff as an employee for the duration of the trip, usually five or six days. The company deducts withholding tax, the driver is covered by workman's compensation, charged with social security and is usually paid at the end of the trip. The plaintiff company, likewise, carries insurance on the cargo, is responsible for its delivery to consignee, and any loss or damage suffered by the merchandise during transportation falls on the plaintiff company. The lease agreement provides that the plaintiff company is to have supervision and control over the truck or equipment for the duration of the trip, but actually between Tampa and the point of destination there is no practical way that the plaintiff company can exercise this control as the operation of the truck is actually the responsibility of the driver, who usually selects his route and otherwise has control of his own operations. The defendants (appellees here), constituting the Florida Railroad and Public Utilities Commission, through its agents, so it is alleged in the complaint, have stopped lessor's trucks carrying the plaintiff's merchandise and charged the drivers of such trucks with violation of what is known as the Auto Transportation Company Act, Chapter 323, F.S.A., 1949.
"The plaintiff, therefore, has brought this suit under the Declaratory Judgment Act `to have this Court construe the law relative to its carriage, determine the right of plaintiff to lease vehicles and ship its goods therein and determine its rights as a private citizen to ship its goods in interstate commerce and in the event the Court shall decide in its favor, plaintiff is entitled to have the defendants enjoined from interfering with its goods and employees in interstate commerce.' To this complaint the Utility Commission filed its *177 answer and cross-bill in which cross-bill the Commission seeks to have the plaintiff company enjoined `from leasing motor vehicles for the transportation of its property where such vehicles are to be operated by the lessor or by a driver procured directly or indirectly by such lessor unless said lessor has obtained appropriate authority from the Florida Railroad and Public Utilities Commission to transport property for compensation over the highway of the State of Florida'. By stipulation and order of the Court, Central Truck Lines, Inc. and Great Southern Trucking Company, a corporation, intervened on behalf of the defendant, and Mann Brothers Canning Company, a Florida corporation, Frank Burkart doing business as Burkart Products and Choate & Atkins, Inc., a corporation intervened on behalf of the plaintiff."
After a discussion of the questions involved, the Court further stated:
"The authorities generally are agreed that services rendered or supplied and the acts performed by the lessor, along with the naked equipment, become of controlling weight in determining the status of the lessor. The amount of service determines whether the lessor is a carrier or is engaged in private business of operating a truck rental agency. In the case of Interstate Commerce Commission v. F & F Truck Leasing Company, D.C., 78 F. Supp. 13, the Court said:
"`The issue as to whether truck leasing company which purportedly leased vehicles to shippers under single trip written leases was a "carrier" required to obtain either a certificate of public convenience and necessity as a common carrier or a permit to engage in business of contract carrier would be determined by how much service which goes with ordinary hauling for compensation was being furnished shipper in addition to the leased vehicle, whether on the whole, arrangement between parties indicated that a transportation service was being rendered rather than simply furnishing for private operation a vehicle to shipper, and whether vehicle was being operated by shipper in same manner as would normally obtain if he were owner of the rented equipment.'
"In the case of United States v. La Tuff Transfer Service, D.C., 95 F. Supp. 375, 381, the Court uses the following language:
"`Motor carrier operations must be bona fide and conducted in good faith, without a shadow of subterfuge or attempted evasion of the letter or obligation of the law. Any plan or scheme, whether by purported lease, agency, or other device disguising the true nature of the transportation will be of no avail for that purpose. Where one's object in the transportation of property on public highways is to earn compensation for the use of his equipment and his services, he cannot evade regulation by execution of leases or other agreements which purport to give the alleged lessee the status of a private carrier.' (And cases cited.)
"`Furnishing motor trucks to shippers with drivers selected and employed by the lessor has been in a long line of Commission decisions found to constitute the rendition of a motor truck transportation service subject to Commission regulation. In these cases the Commission found that the lessor, in selecting and furnishing a driver, in fact retained the right to control, direct and dominate the performance of the service.'
"In the case before the Court the lessor (a) furnishes the motor vehicle for compensation with the owner as driver or an employee of the owner as driver for use by the shipper to transport property moving in interstate commerce and (b) collects rent for the truck on a per diem basis for the period necessary to make the single or one-way outbound trip, retaining possession of the vehicle for further leasing to another shipper upon completion of the haul. Equity looks at the substance and *178 not the form. The arrangement involved in this case constitutes a transportation service and not a leasing rental of the vehicle by the shipper for his private operation, so that such use constitutes transportation over the highways of the State of Florida for which authority is required by law from the Utility Commission and/or the Interstate Commerce Commission.
"It is thereupon, adjudged and ordered that the plaintiff, Bruce's Juices, Inc., be and is hereby permanently enjoined from leasing motor vehicles for the transportation of its property where such vehicles are to be operated by the lessor or by a driver procured directly or indirectly by such lessor unless said lessor has obtained appropriate authority from the Florida Railroad and Public Utilities Commission to transport property for compensation over the highways of the State of Florida."
The injunction contained in the final decree was later amended by adding the following:
"Provided, this injunction shall not apply to transportation carried on wholly outside of the State of Florida or to transportation within areas of the State of Florida wherein the Florida Railroad and Public Utilities Commission has no authority under Chapter 323, Florida Statutes 1949."
The testimony amply supports the findings of fact. Little needs to be added to the foregoing opinion of the trial Court and it is now adopted as a part of the opinion of this Court.
The case falls within the rule announced in Public Service Commission v. Lloyd A. Fry Roofing Co., 219 Ark. 553, 244 S.W.2d 147, 149. The Arkansas Court, in disapproving a comparable arrangement, said:
"In the light of the above we are of the opinion that the driver-owners involved in this litigation were contract carriers as defined in the section of Act 367 of 1941 quoted above and that they were therefore required to have a certificate of necessity and convenience from the Arkansas Public Service Commission. It seems to us that the arrangements made by appellee to deliver its own products as set forth above amount only to a clever plan to circumvent the letter and spirit of the law. We could not express this view in better language than was used in the case of Georgia Truck System v. Interstate Commerce Commission, 5 Cir., 123 F.2d 210, 212, where the court in dealing with a similar situation said: `* * * It is true that the contracts, under cover of which the operations were conducted, are in most of their provisions carefully drawn to give color to appellant's claim of renting only, and if the operations had been conducted strictly within that form, there might have been some question whether the operations so conducted were transportation operations within the invoked act. When, however, the contracts are read in the light of the construction accorded them by the parties by the actual operations under them, it is clear that the scheme as a whole is a mere subterfuge, an unpermitted evasion, not a real avoidance of the provisions of the law.'
"It is apparent that appellee seeks to obtain all the obvious advantages of having its products delivered by trucks driven and maintained by the owners thereof without complying with the Arkansas law regulating contract carriers, but if this arrangement is approved and carried to its ultimate possibilities it could have the effect of destroying a sizeable industry. * * *"
The decision of the lower court has been previously affirmed by this Court without opinion and a petition for rehearing has been requested by appellant.
For the reasons above stated the rehearing should be denied.
SEBRING, C.J., and MATHEWS, J., and FUTCH, Associate Justice, concur.