71 So.2d 839

## STATE

v.

## L. P. GAS TRANSPORT CO., Inc.

4 Div. 687.

Supreme Court of Alabama.

March 18, 1954.

Rehearing Denied April 22, 1954.

Si Garrett, Atty. Gen., H. Tiller, Wm. H. Burton, Asst. Attys. Gen., for appellant.

**638**

John C. Walters, Troy, for appellee.

## PER CURIAM.

This is an appeal by the State from a decree in equity of the Circuit Court of Coffee County, at Enterprise, reversing an assessment of a mileage tax against appellee made by the State Department of Revenue. The mileage tax is on motor carriers using the highways of this State and was assessed under section 301(34), Title 48, Pocket Part, Code.

Motor carriers are defined by section 301(1), subd. H to include both common carriers and contract carriers, as defined in

section 301(1), subd. F for one, and section 301(1), subd. G for the other.

The State's contention is that during the time in question appellee was a contract carrier and, therefore, subject to the mileage tax. A contract carrier is defined in G, *supra*, as any person, not a common carrier as defined in F, *supra*, "who or which under a special or individual contract or agreement, under special or individual contracts or special or individual agreements, and whether directly or by lease or any other arrangement transports passengers or property by motor vehicle for compensation in this State."

Defendant is a corporation organized on August 7, 1950, under the laws of Alabama

"To purchase, lease, or in any manner acquire, hold, own, develop, sell, use or in any manner turn to account or dispose of land and real estate, or any rights or privileges (sic) connected therewith, and to erect, purchase, take on lease; or otherwise acquire, hold, own, operate or in any manner turn to account or dispose of such personal property as will be required toward operating as a Liquid Petroleum Gas Transport Company.

"To lease such personal property (sic) as may be used in the transport of said gas products to any other person, persons, companies or associations whatever, for the purpose of transporting said gas products."

The incorporators are G. R. McCormick and his mother, owning one-half of the stock, and H. R. Theriot and his wife, owning one-half of the stock. They are the officers and directors of the corporation. McCormick is president and Theriot is vice-president.

One must be engaged in transporting property of another for hire to be a contract carrier as defined above. If he is engaged in transporting his own property and not that of another for hire, he is not subject to the tax.

H. R. Theriot owned and operated an individual business under the name and style of "L. P. Gas Service Company" unincorporated. This business was located at Troy, where he was engaged in the business of selling his own liquid petroleum gas and appliances. McCormick and Theriot were partners in a business conducted at New Brockton, Coffee County, Alabama, for the sale of petroleum products and appliances. The New Brockton partnership bought its products from Theriot at Troy.

On August 31, 1950 a contract of lease was made between the corporation, executed in its name by McCormick, and the L. P. Gas Service Company by H. R. Theriot. That instrument is in the following form:

"Know all men by these present:

"That we, Gibbs R. McCormick and Horace R. Theriot, d/b/a L. P. Gas Transport Co., Inc., of New Brockton, Alabama, as party of the first part, and L. P. Gas Service Co., of Troy, Alabama, as party of the second part, do hereby make and enter into the following lease contract, as follows:

"1. First party, for value received, hereby rents and leases unto second party, one 1200 International Truck R. D. 4061031, together with the trailer attached thereto:

"2. It is strictly understood and agreed that second party will transport only products owned by said second party and will not, under any circumstances, permit said equipment to be used for any other purpose;

"3. The use of said equipment by said second party may be strictly subject to the terms of paragraph 2, from any points of destination to any terminal deemed desirable;

"4. This lease may be cancelled by either party upon five (5) days notice to the other."

On the trial the parties stipulated: "That the question in this case is whether or not the contract, dated August 31, 1950, between the L. P. Gas Transport Company, Inc., and the L. P. Gas Service Company by H. R. Theriot, was made for the evasion of tax, or was made as a legal instrument which might have avoided the tax,—the question being whether or not it was a legitimate transaction, or whether it could be said to be a straight-out lease of the equipment or a subterfuge."

The testimony was taken orally before the trial judge. The court concluded from the evidence "that the lease is not a device or subterfuge upon and under which appellant (who is appellee here) in substance is operating a transportation business". It therefore set aside and vacated the assessment for a mileage tax against appellee corporation.

If Theriot's service company is engaged in hauling his own products, using the truck belonging to appellee corporation under a bona fide lease of it by Theriot from the corporation, and the corporation was not otherwise connected with the transportation of Theriot's property, the corporation would not be liable for the mileage tax.

The law, defining a contract carrier which we have quoted above, seems to recognize a custom of motor truck carriers whereby their drivers own the trucks and lease them to the transportation operator, and become their agent in its operation. Eagle Motor Lines v. Hood, 256 Ala. 395, 55 So.2d 126. A contract carrier includes one who transports the goods of another for hire, though done in a truck leased by him from the owner who operates it as the agent of the lessee.

The question here is, does that situation stamp the *owner of the truck* as a contract carrier, or is it sufficient evidence that he is such carrier for him to lease his truck to one who uses it in the transportation of his own goods? The answer to that question is controlled by the circumstances of each case.

Here Theriot had charge of the equipment leased to him, gave directions as to its movements. The driver was responsible to Theriot while so engaged, and "was not under the management or control of the transport company (corporation), other

than as to compensation". * * *. "In other words, Theriot leased the equipment, services of the driver and the entire outfit at the rate of forty cents per loaded mile". The corporation paid the driver and upkeep, including insurance, gasoline, tax, tires, replacements and was responsible in the event of wreck or damage. The corporation had liability insurance. "Q. And it was liable then for the damages? A. Well, they was. It could have been the gas company—either one. It was his (Theriot's) fuel he was hauling. There was double liability there. Q. The corporation, though, carried liability insurance? A. That is right, and he had liability insurance too. * * * He never had an accident." With reference to the insurance carriage McCormick said: "It was a greater cost to the company—anywhere between $1,200 to $1,500 for the insurance, but we had separate liability on the transport and then we had liability on the Propane Gas and Appliance Company and on the service company. It would have cut down. They had separate liability insurance from the company."

■ It is a correct principle that if Theriot were the sole owner of the corporation, he could without question use its facilities and employees to haul his own products, and no mileage tax would be chargeable. The owner of all the stock of the corporation is the equitable owner of its property. Boozer v. Blake, 245 Ala. 389(14), 17 So.2d 152. If he owns half of the stock of the corporation, and he and the owner of the other half make an arrangement for the use of its truck under a lease to haul his own property, making no such arrangement with others, there is no particular reason to call it something other than a release. The evidence also showed that the forty cents per "loaded" mile was set up by agreement between the two owners as an estimate of the amount it would take to keep up and buy the truck. The corporation owned only one truck, and did not make a profit. It was incorporated for Theriot to have a better set up, as he thought, in respect to public liability and insurance, and it did no other business than to lease its truck to Theriot.

It is conceded that the question is not controlled alone by the use of the words importing a lease rather than an agreement of haulage for hire. But when it uses such terms as mean the one situation or the other, that will be treated as their meaning unless the circumstances show a different intent. If their intent is consistent with the terms used in the lease as expressive of their meaning, they should not be held to point to a different meaning.

The lease used the term "for value received". The evidence shows that the amount was forty cents for a "loaded" mile. This is shown to mean forty cents for each mile traveled by the truck when loaded with the goods of the service company. When going after a load the truck was empty and no charge was separately figured on that part of the trip. When returning it was loaded, and forty cents per mile was agreed on as being sufficient to cover all expenses of the trip both ways, including fuel, insurance, salary of driver and amortization of the cost of the truck. This was without regard to the amount of the load. The service company was not paying a reasonable sum for hauling its goods to Troy, but an amount based on other estimates. The corporation carried no goods for any one. The service company was not engaged in hauling for others and did not offer to do so. The corporation was formed to permit the service company to use that method of hauling for itself. It did not adopt the policy of leasing its one truck to others as a method of doing a contract business generally. It made no such arrangement with others than Theriot. Instead of the corporation doing a contract business by adopting the plan of leasing its equipment, it was Theriot's arrangement to do his own hauling.

The cases which hold the truck owner to be a contract carrier, though he executes a lease of his equipment, all emphasize distinctive circumstances—not here shown. They do not show that the truck owner leases to only one person; nor that the truck owner and lessee are largely one and the same person; nor that it really costs the lessee more to haul his goods in that

way than for him to own the truck and carry the insurance; nor that the truck owner makes no profit out of the arrangement; nor that the lessee has complete control of the haulage. We cite the cases which have such distinguishing elements in which the truck owner is engaged generally in hauling for many customers and adopts the lease system as a method of serving them and as many as he can accommodate, the truck owner also having control of the drivers and of the trip generally. Bruce's Juices Inc. v. King, Fla., 61 So.2d 175; Public Service Commission v. Lloyd A. Fry Roofing Co., 219 Ark. 553, 244 S.W.2d 147; Interstate Commerce Commission v. Gannoe, D.C., 100 F.Supp. 790; A. W. Stickle & Co. v. Interstate Commerce Commission, 10 Cir., 128 F.2d 155; Georgia Truck System v. Interstate Commerce Commission, 5 Cir., 123 F.2d 210.

On the other hand, we cite cases which more closely resemble the circumstances here shown, as follows: People v. Hertz, 338 Mich. 139, 61 N.W.2d 113; Lloyd A. Fry Roofing Co. v. Michigan Public Service Commission, 338 Mich. 544, 61 N.W.2d 783; Farmers Gin Co-op. Ass'n v. Mitchell, Tex.Civ.App., 233 S.W.2d 948; Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837. In these cases it was held that the truck owners were not engaged in the business of a contract carrier.

We agree with the trial court in holding that this appellee was not so engaged and not subject to the mileage tax assessed against him. The judgment should therefore be affirmed.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, STAKELY and GOODWYN, JJ., concur.