134

77 So.2d 482

**STATE of Alabama**

v.

**Thomas E. HOILES.**

**1 Div. 600.**

Supreme Court of Alabama.

Jan. 20, 1955.

Chason & Stone, Bay Minette, for appellee.

**SIMPSON, Justice.**

This is an appeal from a decree of the circuit court of Baldwin County setting aside a final assessment for mileage tax levied by the State Department of Revenue.

During the period covered by the assessment the taxpayer, appellee, had a consignment agreement with the Gulf Refining Company whereby the latter was to consign and ship to the appellee certain petroleum products. Appellee was to sell the products on terms specified by the Gulf Company. The agreement provided that the products were at all times until sold by appellee to remain the property of the consignor but consignee was "responsible" for shortages. The contract provided:

"Consignor is interested only in results in terms of increased volume of sales of Consignor's products and the means, methods and details are left en-

Si Garrett, Atty. Gen., H. Grady Tiller and Wm. H. Burton, Asst. Attys. Gen., for appellant.

tirely to the discretion and judgment of the Consignee, who shall have entire charge and control of the management of said business for the purpose of the accomplishment of said results."

All equipment used in distributing the products was the property of the consignee. At the end of each day it was the duty of the appellee to transmit to the Gulf Company a statement of sales and deliveries and a remittance of all monies collected. For these services appellee received a commission. This contract contemplated adequate storage facilities at Robertsdale, Alabama, to be maintained by appellee. During the period covered by the assessment these facilities never materialized and it became necessary to make other arrangements. A hauling agreement was entered into by the parties whereby appellee was to pick up the products at the consignor's refining plants at Mobile and Magazine, Alabama. For hauling these products appellee received 3/4 cent per gallon. The agreement did not specify to what location the products were to be carried. The evidence showed, however, that the consignee made deliveries to retailers directly from the pickup stations. One such station was only a mile or two from one of the refineries, while others were over twenty-five miles from them.

Appellee's theory is that he is not a contract carrier for compensation as defined in §§ 301(1), sub. G, and 301(33), sub. (2), Title 48 Code 1940, and even if within such definition that he comes within the exception provided for in § 301(2), sub. A(3), which as pertinent exempts from the tax "motor vehicles while used in the intrastate transportation of property when the person furnishing the transportation is legally and regularly engaged in the business of selling such property."

Counsel for the State so cogently argues that since title to the property being hauled remained in the Gulf Company until delivered to the retailer, the exemption does not apply in view of the statement in State v. L. P. Gas Transport Co., 260 Ala. 637, 71 So.2d 839, 840(1), to the effect that "one

must be engaged in transporting property of another for hire to be a contract carrier as defined above. If he is engaged in transporting his own property and not that of another for hire, he is not subject to the tax." While it would be difficult to conceive a situation in which one would be paid for hauling his own property, the situs of the title of the property is in no sense decisive of the issue presented by the mileage tax law. The exemption supra makes no reference to the status of the title of the property, the exemption covering any person furnishing the transportation who is legally and regularly engaged in the business of selling the property hauled. In the case of State v. Glenwood Mercantile Co., 261 Ala. 455, 74 So.2d 455, we emphasized the fact that the taxpayer did not own the property being transported, mainly because it showed in that case that the property was being delivered to the person who had actually bought it from the producer and thus the carrier was not engaged in selling the product.

The case of Griffin v. Edwards, 260 Ala. 12, 68 So.2d 705, affords sufficient insight into the problem presented in the instant case to indicate clearly its proper solution. There the taxpayer had two separate contracts with an oil company in Florida. One contract specified that the taxpayer was to distribute the company's products in Alabama on a commission basis. Another contract provided that the taxpayer was to haul the products from the company's plants in Florida to its bulk plants in Alabama. The company was both consignor and consignee of the products moving from Florida to Alabama. The distribution for sale under the first contract began from the Alabama bulk plants and were held to be exempt from the mileage tax under sub. A(3), supra. This court also held that the taxpayer was subject to the mileage tax while carrying the petroleum products from the Florida plants to the bulk plants in Alabama. In rationalizing the distinction, it was there stated:

"* * * the court has been drawn to the conclusion that the services

which were performed under the trucking contract were transportational services, which were distinct and separate from the selling duties of the appellants. The appellants' activity under the hauling contract was in no sense a part of the business of selling the products to their retail dealers, but was exclusively that of contract carrier, who were paid by the company consignor to transport and deliver its products to its bulk plants in Alabama, while on the other hand the other activity of appellants—selling the products of the Company—began after their transportational business under the trucking contract had been accomplished by said delivery. * * *" 260 Ala. 15, 68 So.2d 707.

The taxpayer in the Griffin case was regularly engaged in selling the property being hauled, but he was not so engaged while doing the transporting under the trucking contract, for which the tax was charged. His selling operations began when he picked up the products from the bulk plants to begin distribution to retailers.

In the instant case the taxpayer's selling operations began when he loaded the products at Mobile and Magazine. The transportation services were not separate and distinct from the selling services, as they were in the Griffin case. At no time was the taxpayer hauling the products when he was not directly en route to retailing establishments to deliver the products. We are therefore of the opinion that at the time the taxpayer was conducting the hauling operations involved, he was also regularly engaged in selling the products being hauled and thus came within the exemption provided for in § 301(2), sub. A(3).

The conclusion below was consonant with the foregoing views.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and MAYFIELD, JJ., concur.