SHANNON, Judge.
The appellee, defendant below, was arrested on September 26, 1957, in Okeechobee *571 'County pursuant to a warrant issued by the county judge of said county. The warrant charged in substance that he was violating -§ 323.02, Fla.Stat.1957, F.S.A. On a habeas corpus hearing before the circuit court an order of discharge was entered. It is from that order that the plaintiffs have brought an appeal.
John H. Ingalls, the defendant, was a member of a group of drivers belonging to the Independent Truck Drivers’ Association. The arrangement under which he worked was put into evidence by an affidavit from liim. The arrangement was briefly this: When a shipper has commodities that he wishes to ship he will first contact the group known as Traffic Advisors’ Service, Inc., of which E. N. Cook was President. The Traffic Advisors’ Service, Inc. then arranges that a driver from the Independent Drivers’ Association picks up a tractor and trailer at Tripco, Inc. The driver then hauls merchandise to the designated place and turns over the rented equipment to an agent of Tripco. There was paid to the defendant for individual trips on the basis of mileage, and there was deducted from his wages by the shipper, withholding taxes, social security, etc. The checks are received by Traffic Advisors’ Service, Inc., which includes a fee charged by it. On this particular trip, out of which his arrest arose, the defendant signed •an affidavit that as a member of the Independent Truck Drivers’ Association he received instructions from them and then went to pick up a tractor and trailer at Tripco, Inc. and thereafter proceeded to a factory in Wauchula and loaded canned citrus juice to be delivered to Columbia, S. C., Goldsboro, North Carolina and Richmond, Virginia. When he had made his final delivery in Richmond, Virginia, he then delivered the truck to an agent of Tripco’s in Elizabeth, New Jersey. At this point he communicated by telephone with the Independent Driver’s Association and was referred to New York Wire Cloth Company of York, Pennsylvania, where he again received merchandise to be delivered to Memphis, Tennessee and afterwards he delivered his equipment to the Tripco, Inc. in New Orleans, Louisiana. At New Orleans he again contacted the Independent Truck Drivers’ Association and was informed that he was to pick up merchandise at Marreo, Louisiana, and proceed to a receiver in Miami, Florida. He again picked up the equipment from Tripco’s agent in Louisiana and was on his way to Miami at the time of his arrest. He had been independently driving Tripco’s equipment for approximately one and a half years and at no time had he received any compensation from Tripco but his salary had always been paid to him by the customer through Traffic Advisors’ Service, Inc. The Traffic Ad-visors’ Service, Inc., according to a stipulation filed in the case, was an agent of the shipper in connection with transportation problems. They gave advice as to routes, loads, maps and other matters involving highway transportation. They also maintained records relating to competent drivers and equipment and recommended almost exclusively drivers who were members of the Independent Truck Drivers’ Association. According to the stipulation when a shipper wishes to rent equipment and employ a driver, Traffic Advisors’ Service, Inc. contacts the' Independent Truck Drivers’ Association who immediately gets in touch with one of their members and delivers the instructions to him to pick up the equipment. Traffic Advisors’ Service, Inc. also receives all papers by mail and bills the shipper or receiver by an individual trip envelope. There was included a bill for truck rental, driver’s fee and fee of Traffic Advisors’ Service, Inc. All payments were based on mileage from the point at which the equipment was rented. Also, according to the stipulation rental was paid with the equipment fully loaded, partially loaded, or empty.
We have given very briefly the framework around which the carriage was carried on.
At the time the defendant was arrested he was charged with violation of Section 323.02, Fla.Stat.1957, F.S.A., in that he did unlawfully operate a motor vehicle for the purpose of transporting property for com *572 pensation over a public highway in the State of Florida and in Okeechobee County, Florida, without obtaining from the Florida Railroad and Public Utilities Commission a certificate of public convenience and necessity or a permit or a certificate of registration with Interstate Commerce Commission’s authority.
After the hearing the court below held that the defendant was a bona fide employee of the lessee of the motor vehicle and that under Chapter 323, Fla.Stat.19S7, F.S.A., the lower court held that he was engaged as a private carrier and that neither he nor his employer were engaged in transportation by a motor vehicle of passengers or property for compensation.
It appears that there are three points involved in these proceedings, first in brief, whether or not the circuit judge was authorized to hold that there was no probable cause for detention; two, that the circuit judge erred in holding that the defendant was a bona fide employee of the lessee at the time of his arrest and therefore, not required to be operating under a certificate of public convenience and necessity; and three, that the circuit court erred in its construction of Section 323.01(11).
Section 323.01(11) provides:
“ ‘For compensation’ as used in these definitions and in this chapter means a return in money or in property or in anything of value for service in transporting persons or property by motor vehicles over public highways, whether paid, received, or realized, directly or indirectly, and shall specifically be deemed to include any profit in money, goods or things realized on the delivered price of goods, merchandise, cargo or property, where title or ownership is temporarily vested during transit in the carrier as a subterfuge for the purpose of avoiding regulation under this chapter; provided that where said profit is equal to or less than the regularly established rate applicable to the transportation of said property by common carriers authorized by law to transport property for compensation, such scheme or device shall be presumed to be a subterfuge for the purpose of avoiding regulations under this chapter; provided, further, the following shall not be deemed as operating ‘for compensation’ under this chapter, to-wit: hearses and ambulances when operated by licensed embalmers and morticians, their agents and employees in this state; wreckers used to transport motor vehicles to garages and repair shops; dump trucks when used in transportation of mixed road building materials from a mixing plant to the construction site of a public highway; and motor vehicular transportation of United States mail.”'
Section 323.02 cites as follows:
“No auto transportation company shall operate any motor vehicle for the transportation of persons or property for compensation on any public highway in this state without first having obtained from the Florida railroad and public utilities commission a certificate of public convenience and necessity or a permit as hereinafter provided or a certificate of registration of interstate commerce commission authority as-hereinafter provided.”
And, Section 323.30 provides:
“Every officer, agent or employee of any corporation, and every other person who violates or fails to comply with, or who procures, aids or abets, in the violation of any provisions of this chapter, or who fails to obey, observe or comply with any order, decision, rule or regulation, direction, demand or requirement, or any part or provision thereof, or who fails to observe any regulations as to maximum speed of operation or maximum weight of load, of the railroad and public utilities commission, or who procures, aids, or abets any person in his failure to *573 obey, observe or comply with any such order, maximum speed of operation, maximum weight of load, decision, rule, direction, demand, or regulation, or any part or provision thereof, is guilty of a misdemeanor and is punishable by a fine not exceeding five hundred dollars or by imprisonment in the county jail not exceeding one year.”
In view of the decision which we have come to, it is only necessary that we deal with point two. In undertaking to view the facts as they develop in this particular case, we are reminded by the defendant of a statement by Mr. Justice Brown in State ex rel. Fohl v. Karel, 1937, 131 Fla. 305, 180 So. 319 when he said:
“Counsel for the Railroad Commission appear to contend that this case merely is an evasion (or) an attempt to evade the application of the act, and, if it be permitted in this case, it will open the door to other evasions. This is hardly probable. As was said by Mr. Justice Holmes in Bullen v. Wisconsin, 240 U.S. 625, 36 S.Ct. 473, 474, 60 L.Ed. 830, 835: ‘We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion, what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law/ ”
In studying the facts in this case we are conscious that the issue is not whether there is an attempt to evade the law but whether the transactions involving the rental company, the truck driver, the advisors’ service and the shipper constitute private carriage on the part of the shipper or common carriage on the part of one or all of the other three groups. In studying the various cases and the law relating to the particular facts in those cases, we refer to Bruce’s Juices, Inc., v. King, Fla.1952, 61 So.2d 175. In the Bruce’s Juices case the Supreme Court sustained an injunction holding that the lessor furnished the shipper a motor vehicle with owner or his employee as driver, for use in interstate commerce, and collected rent on a per diem basis for a single or one-way outbound trip, retaining possession of the vehicle for further leasing to other shippers. The arrangement was not a leasing for shipper’s private operation, but was a transportation service for which authority was required by law from the Utility Commission and/or the Interstate Commerce Commission. For a complete analysis of the Bruce’s Juices case we give a quotation from the lower court’s order:
“ * * * Many trucks, operated by the owner as the driver in some instances, and in others operated by an employee of the owner, bring a truck load of merchandise from various parts of the country to Tampa. When this truck load is delivered at its destination here plaintiff then enters into what is termed a lease agreement for a single or one-way outbound trip with the owner of the truck, where the driver is the owner or with the driver as agent of the owner, where the driver is an employee of the owner, whereby the truck is leased to the plaintiff for the estimated duration of the trip to deliver the plaintiff’s products to its consignee and the driver is hired by the plaintiff for the same period of time and the lease agreement coming to an end when the merchandise is delivered to the consignee and the owner of the truck is then, of course, free to make other arrangements for the use of his truck. The basis or pay for transportation is on a per diem day for the use of the truck and, likewise, the driver is paid on a per diem day. The driver is paid separately and is carried on the payroll of the plaintiff as an employee for the duration of the trip, usually five or six days. The company deducts withholding tax, the driver is covered *574 by workman’s compensation, charged with social security and is usually paid at the end of the trip. * * * ”
We have in the present case a situation very much like that prevailing in the Bruce’s Juices, Inc. case, except that we ■do have Traffic Advisors’ Service, Inc. involved which takes it one step beyond the facts in Bruce’s Juices. In other words we have in the present case Traffic Advisors’ Service, Inc., which, as may be inferred from the stipulation as well as the affidavit in the case, is a directing entity to all the ■corporations and associations involved herein. When a shipper has some merchandise that he wishes shipped, he would ordinarily take the matter up with a shipping or trucking concern. It can be inferred from the testimony in this case that the shipper first contacts the Traffic Ad-visors’ Service, Inc. and advises it that it has some merchandise which it wants ■shipped. Then Traffic Advisors’ Service, Inc. calls the Independent Truck Drivers’ Association and gives them instructions. A driver from the Independent Truck Drivers’ Association then proceeds to Trip-co and picks up a truck and, all the preliminaries arranged, the truck and driver proceed to the shipper’s place of business to pick up the merchandise and proceed to the point of destination. The driver of the truck takes the position that he is the shipper’s employee, in that he gets a salary from him. We have set out that he does receive his salary, but we again call attention to the fact that the shipper sends ■separate checks directed to the Traffic Ad-visors’ Service, Inc. and it is from it that the driver actually gets his money. Insofar as the shipper is concerned, it makes no ■difference to it whether they pay for the contract of carriage in two or three checks or only by one check.
As an employee of the shipper we also may well ask what is the employer’s control over the defendant. The truck and driver pick up the shipper’s merchandise and until the merchandise arrives at its point of destination does the shipper have any actual control over the defendant. The lease that the shipper signs is, of course, in its language a lease, but after terming it a lease, as undoubtedly it is in form, the attributes of the shipper as a lessee fall short of the attributes which, in substance, the lessee must have insofar as the employment of this defendant is concerned. Does his status change one bit when he says he is an employee of the shipper? Does the shipper have the right to determine who his driver will be, the right to direct whether the employee will work or not work, to determine how much he shall be paid, and to discharge him at any given moment?
In Bruce’s Juices v. King, supra, [61 So. 2d 177,] the lower court, in quoting from the case of Interstate Commerce Commission v. F & F Truck Leasing Company, D.C., 78 F.Supp. 13, said:
“ ‘The issue as to whether truck leasing company which purportedly leased vehicles to shippers under single trip written leases was a “carrier” required to obtain either a certificate of public convenience and necessity as a common carrier or a permit to engage in business of contract carrier would be determined by how much service which goes with ordinary hauling for compensation was being furnished shipper in addition to the leased vehicle, whether on the whole, arrangement between parties indicated that a transportation service was being rendered rather than simply furnishing for private operation a vehicle to shipper, and whether vehicle was being operated by shipper in same manner as would normally obtain if he were owner of the rented equipment.’ ”
In determining Bruce’s Juices’ case Mr. Justice Roberts had this to say:
“The case falls within the rule announced in Public Service Commission v. Lloyd A. Fry Roofing Co., 219 Ark. 553, 244 S.W.2d 147. 149. The Arkan *575 sas Court, in disapproving a comparable arrangement, said:
“ 'In the light of the above we are of the opinion that the driver-owners involved in this litigation were contract carriers as defined in the section of Act 367 of 1941 quoted above and that they were therefore required to have a certificate of necessity and convenience from the Arkansas Public Service Commission. It seems to us that the arrangements made by appellee to deliver its own products as set forth above amount only to a clever plan to circumvent the letter and spirit of the law. We could not express this view in better language than was used in the case of Georgia Truck System v. Interstate Commerce Commission, 5 Cir., 123 F.2d 210, 212, where the court in dealing with a similar situation said: “ * * It is true that the contracts, under cover of which the operations were conducted, are in most of their provisions carefully drawn to give color to appellant’s claim of renting only, and if the operations had been conducted strictly within that form, there might have been some question whether the operations so conducted were transportation operations within the invoked act. When, however, the contracts are read in the light of the construction accorded them by the parties by the actual operations under them, it is clear that the scheme as a whole is a mere subterfuge, an unpermitted evasion, not a real avoidance of the provisions of the law.”
" ‘It is apparent that appellee seeks to obtain all the obvious advantages of having its products delivered by trucks driven and maintained by the owners thereof without complying with the Arkansas law regulating contract carriers, but if this arrangement is approved and carried to its ultimate possibilities it could have the effect of destroying a sizeable industry. * * * ’ ”
We have relied on the case of Bruce’s Juices insofar as it goes, for the reason that it very forcibly strikes down the leasing agreement arrangement for one trip as is involved in the present case, but we have an added element in the present case, that is, the status of the defendant, an “independent” truck driver, which gives us four entities here instead of three as in Bruce’s Juices.
The case of Stewart v. Mack, Fla., 1953, 66 So.2d 811, involves two entities as it appears in appellant’s brief. However, this case is on the constitutionality of the particular statute and, although it does relate the facts in the case, the only point actually decided by the case was that Section 323 was constitutional.
The Stewart case was before the Supreme Court again in 1956 and is reported in Fla., 86 So.2d 143, 146. In the latter appearance before the Supreme Court the appellants, after having answered the complaint, filed “cross bills” alleging a conspiracy and seeking to enjoin the appellees from enforcing the provisions of Chapter 323 with respect to the conduct of their business. The “cross bills” were dismissed with prejudice. The Supreme Court affirming had this to say:
“ * * * But the real question is whether the findings entered in connection with the final decree are supported by competent substantial evidence, and we hold that this question must be answered in the affirmative and that the case is controlled, as the chancellor held, by Bruce’s Juices, Inc., v. King, Fla., 1951, 61 So.2d 175. * *”
Both plaintiffs and defendants cite the case of Interstate Commerce Commission, v. Vincze, D.C.1957, 151 F.Supp. 449, 12 Federal Carriers Cases 81,112, which was decided by the U. S. District Court of Oregon. After studying the Vincze case we notice that the effect of the decision was refusal of injunction at the present time, but gave it a year within which the case *576 could be reopened if more proof of illegal activities is obtained involving the defendants. The headnote to the Vincze case states the ultimate facts and is as follows:
“An individual owned the majority of stock of a certificated motor carrier, a non-carrier truck rental company, and a non-carrier corporation authorized to furnish truck drivers. Six months after the action was filed by the Commission, the individual transferred his stock ownership in the drivers’ service to another individual. It was held that, because the factual situation did not involve any violation of the Interstate Commerce Act, injunctive relief was not warranted. Of significance was the fact that each shipper exercised control over operations of the drivers and equipment to the extent of controlling only the commodities, routes and destinations and gave no directions with respect to- the return of the equipment at the conclusion of each trip. Nevertheless, it was provided that the Commission could at any time within a year have the cause reopened for further proceedings if more proof of illegal activities was obtained involving the parties.”
The factor around which the decision in the Vincze case revolved was that the particular defendant, Vincze, had transferred his stock ownership in the drivers’ service to another individual and hence, he was not, at the time of the decision, violating the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. and hence, the relief asked for was unwarranted. But, the Vincze case is very persuasive to us for the implications contained in the opinion. The framework in that case is very similar to the framework in the present case. By fitting the facts as we have them into the Vincze case we feel reasonably sure that the defendant would have been enjoined.
Under the fact situation in the present case then we have three entities working in an integrated system to carry the shipper’s goods; Traffic Advisors’ Service, Inc., which is primarily the focal point from which all action stems, Tripco, who furnishes the equipment, and the Independent Drivers’ Association, of which the defendant was a member. The shipper contacts Traffic Advisors’ Service, Inc. and they, in turn, contact the Independent Drivers’ Association, a member of which picks up a truck at Tripco and presents himself to the shipper to load the merchandise. After a written lease for a specific designation is signed and the goods are delivered, then the Traffic Advisors’ Service, Inc. receives checks totaling the exact amount of the carriage, although broken down so as to pay a specific amount for the driver’s wages. Nevertheless, it is a sum that can be designated as freight or payment for transportation of goods.
We hold that in the setup which we have delineated the words “lease” and “employment” consist of mere form and that the subterfuge is patent. Motor carrier operations must be bona fide and conducted in good faith, without a shadow of subterfuge or attempted evasion of the letter or obligation of the law. Any plan or scheme, whether by purported lease, agency, or other device disguising the true nature of the transportation will be of no avail for that purpose.
The order of discharge entered by the lower court is reversed and the cause remanded for action not inconsistent with the views herein expressed.
Reversed.
ALLEN, Acting Chief Judge, and MORROW, R. O., Associate Judge, concur.