NYE-SCHNEIDER-FOWLER GRAIN COMPANY, APPELLANT, V.
MICHAEL HOPKINS ET AL., APPELLEES.

FILED JANUARY 15, 1916.   No. 18126.

1. **Deeds:** FORFEITURE OF TITLE. Where a contract, under which the
title to an elevator site was conveyed to a grain dealer for the
erection of an elevator, contains the provision that, "in case the
elevator burns or is otherwise destroyed," grantee "will rebuild the
same within a reasonable time, or, failing to thus rebuild, reconvey
the real estate" to the grantor, the title of the grantee cannot be
forfeited for not rebuilding, until the lapse of a reasonable time
after the destruction of the elevator.

2. ———: ———. Where land is conveyed by a deed containing the
provision that, in case of the destruction of a building thereon and
the failure of the grantee to rebuild within a reasonable time, the
grantee shall reconvey the land to the grantor, grantee does not
lose title by forfeiture during an extension of time duly granted
for rebuilding purposes.

3. ———: AGREEMENT TO RECONVEY: WAIVER. The right of a cor-
porate grantor to demand a reconveyance of land in the event of
a breach of an agreement by grantee to rebuild an elevator there-
on within a reasonable time after its destruction by fire may be
waived without the formalities essential to the execution of a deed
conveying real estate.

4. **Principal and Agent:** CONTRACT BY AGENT: ACCEPTANCE OF BENE-
FITS. "A principal who accepts the benefits of a contract executed
in his behalf by an agent is chargeable with the instrumentalities
employed by the latter in procuring it." *Tylee v. Illinois C. R. Co.*,
97 Neb. 646.

5. ———: ———: ———.. "A principal will not be permitted to
adopt the beneficial part of an unauthorized contract made by his
agent and reject the remainder." *Farmers & Merchants Bank v.
Farmers & Merchants Nat. Bank*, 49 Neb. 379.

OPINION on motion for rehearing of case reported in 98
Neb. 512. *Former judgment of affirmance vacated, and
judgment of district court reversed, with directions.*

ROSE, J.

This is an action to quiet title to an elevator site in Omaha. The real parties to the controversy are Nye-Schneider-Fowler Grain Company, plaintiff, and the Chicago Great Western Railroad Company, defendant. The action involves the title to land conveyed to plaintiff by the Omaha Grain Terminals company, a subsidiary of defendant, pursuant to a contract executed March 1, 1906. According to that contract, plaintiff agreed to construct upon the site in dispute an elevator with a capacity of 750,000 bushels. Defendant promised to construct switch tracks and to furnish to the elevator as long as it "shall be operated by the Nye-Schneider-Fowler Company or by any company controlled by said Nye-Schneider-Fowler Company" a "free in-switch." It was further provided: "The Nye-Schneider-Fowler Company hereby agrees that, in case the elevator burns or is otherwise destroyed, it will rebuild the same within a reasonable time, or, failing to thus rebuild, reconvey the real estate to the Terminals company." The elevator was constructed and operated by plaintiff until destroyed by fire. Upon its completion the site was deeded to plaintiff. The elevator has not been rebuilt. Defendant claims the land by reason of the forfeiture clause quoted, and asks for a decree quieting the title in its name. Plaintiff insists that the period for rebuilding the elevator was extended by defendant until the contract of March 1, 1906, was canceled by a subsequent agreement. The trial court quieted the disputed title in defendant. Plaintiff appealed and the judgment was affirmed. *Nye-Schneider-Fowler Grain Co. v. Hopkins*, 98 Neb. 512. A rehearing was granted upon motion of plaintiff and the cause has been reargued.

During the former argument on the appeal, it was conceded that the controversy should be treated as if the parties to the transactions were the plaintiff and the defendant as already described herein. *Nye-Schneider-Fowler Grain Co. v. Hopkins*, 98 Neb. 512.

Plaintiff argues that defendant waived and released the right to insist upon a reconveyance of the land. The fire occurred April 3, 1910. The grain in the elevator continued to burn for several months thereafter, and the work of rebuilding was practically impossible during that time. Plaintiff's president and manager testified that it would have taken at least a year to rebuild the elevator under favorable conditions. He had written defendant's officers in 1910, "We would very probably not rebuild our Omaha elevator;" but he also testified that no decision in the matter had been reached, and that the question was being kept open until certain matters concerning the grain market at Omaha were settled. John W. Blabon, vice-president of defendant in charge of traffic, wrote plaintiff August 15, 1910:

"In conversation with Mr. Berry prior to his visiting Omaha I said to Mr. Berry that we desired to impress you with our disposition to grant you reasonable time in which to rebuild on our terminals, which meant that if conditions were not favorable to your rebuilding at once the question could go over until another year."

In the same letter Blabon expressed a desire for an arrangement which would avoid the burden of the "free in-switch." This privilege of plaintiff was an expensive and troublesome obligation of defendant. The principal purpose of the latter in carrying on the negotiations was relief from this condition of affairs. Plaintiff had not decided to rebuild, but desired to lease from defendant an independent elevator. The privilege of a free in-switch applied alone to the elevator operated by plaintiff on the site in controversy. Blabon, the vice-president of defendant in charge of traffic, sent the following telegram to plaintiff July 24, 1911:

"If we could both agree on canceling the contract of March, 1906, both interests relinquishing all rights thereunder, we might entertain leasing you independent house for one year at rate of ten thousand, you to undertake to give us at least two thousand cars for Chicago and

Minneapolis. * * * This would mean disregard of any land proposition as partial or whole payment and leave you free to negotiate this with others."

Plaintiff answered, offering to pay a rental of $6,000, and refusing to guarantee tonnage. Blabon, July 25, 1911, replied:

"We feel that the rental you propose is inadequate and that other inducements to turning the house over to you exclusively are too indefinite. * * * Mr. Somers plans to be in Omaha tomorrow and you can discuss matter with him, and, if necessary, I will spend Thursday there as I propose to dispose of the matter one way or the other this week."

Somers was the general freight agent of defendant. July 27, 1911, he met with officers of plaintiff, and a memorandum was drawn up and approved, leasing the independent elevator to plaintiff as the second party for one year from July 15, 1911, for a rental of $8,000. It provided for the payment of switching charges on cars both in and out of the terminal, and contained the following stipulations:

"A certain contract between first party and allied interests on one hand and second party on other, dated March, 1906, to be canceled by both, both interests relinquishing all rights thereunder. The second party's land to be freed to it, and if necessary quitclaim deed to pass to confirm title in second party."

Somers wrote to plaintiff August 8, 1911, stating that in agreeing to the provision just quoted he had exceeded his authority and that the agreement of March 1, 1906, could be canceled only by resolution of the board of directors of the Terminals company. He also said: "All of the other provisions in our memorandum of agreement will be carried out substantially as outlined. * * * We will at once publish a tariff assessing an in-switching charge, and as to what effect this will have on the agreement is mere conjecture." A tariff with an in-switching charge was in fact published by defendant, contrary to the terms

of the contract of March 1, 1906. October 6, 1911, a formal lease for the independent elevator for one year at a rental of $8,000 was executed as of date July 15, 1911, conforming to the memorandum of July 27, 1911. In returning the executed lease, plaintiff inquired, referring to the memorandum of July 27, 1911, regarding the cancelation of the contract of March 1, 1906: "When will the quitclaim deed be ready?" Plaintiff's president testified that there were no negotiations subsequent to the memorandum of July 27, 1911. The lease was executed without substantial variance from the memorandum of that date.

To prevent the quieting of title in plaintiff, defendant urges the following propositions: Somers had no authority to agree to cancel the contract of March 1, 1906. The memorandum was not a contract. Defendant had title to the land. It could not be conveyed except under the direction of the board of directors of the Omaha Grain Terminals company. The position thus taken does not seem to be tenable. When the deed was delivered to plaintiff upon completion of the elevator, the title vested in plaintiff, subject to reconveyance on the terms specified in the contract of March 1, 1906. The title remained in plaintiff, subject to forfeiture, if it failed to rebuild the elevator within a reasonable time after its destruction. What was a reasonable time depended upon the circumstances. The conduct of the parties is evidence of what they considered to be a reasonable time. By its acts or agreements defendant could extend the period for rebuilding the elevator. The letter of its vice-president, August 15, 1910, amounted to an extension for one year, even if the circumstances indicated a shorter term; but it is not shown that a reasonable time for rebuilding had expired. On the contrary, the record shows that defendant considered that the title remained in plaintiff. Correspondence leading to the memorandum of July 27, 1911, indicates this. Had plaintiff forfeited its rights under the contract of March 1, 1906, defendant would be under no obligation to furnish plaintiff a free in-switch. The evidence shows,

as already intimated, that the purpose of defendant in conducting the negotiations terminating in the memorandum of July 27, 1911, was to be relieved from the liability to furnish free switching facilities.  There was no forfeiture of plaintiff's title to the elevator site.  The title was in plaintiff, and not in defendant.  The latter's interest was a mere right to a reconveyance in case plaintiff did not rebuild the elevator within a reasonable time.  The waiver thereof did not require a conveyance of real property or the formalities incident to such a transaction.  An authorized agent may agree to cancel or waive such a right.  *St. Clair v. Rutledge,* 115 Wis. 583.

Plaintiff insists that Somers had authority to cancel or waive any existing right to a reconveyance; but, even if this position is untenable, defendant ratified his acts by accepting benefits secured thereby.  Somers was the general freight agent of defendant.  Blabon was vice-president in charge of traffic.  In-switching is a branch of that subject.  Somers was acting under the direction of Blabon, and the agreement made by the former contained the general terms which Blabon had suggested to plaintiff.  The main purpose of Blabon was to relieve his principal from a costly obligation to furnish switching services without charge.  This purpose was accomplished through the memorandum made by Somers.  Pursuant to its terms defendant published a tariff requiring plaintiff to pay the regular charges for in-switching.  Plaintiff executed the lease for the independent elevator in accordance with the terms of that memorandum and delivered it to defendant with the understanding that plaintiff should have a quitclaim deed to the property in controversy.  If Somers was without actual authority to represent defendant in canceling the contract of March 1, 1906, his principal, by knowingly adopting his acts and by retaining the benefits thereof, is bound by his agreements.  The rules are:

"A principal who accepts the benefits of a contract executed in his behalf by an agent is chargeable with the in-

strumentalities employed by the latter in procuring it." *Tylee* v. *Illinois C. R. Co.,* 97 Neb. 646.

"A principal will not be permitted to adopt the beneficial part of an unauthorized contract made by his agent and reject the remainder." *Farmers & Merchants 'Bank v. Farmers & Merchants Nat. Bank,* 49 Neb. 379.

For the reasons stated, the judgment of affirmance is vacated, and the judgment of the trial court is reversed, with directions to enter a decree quieting in plaintiff the title to the land in controversy.

REVERSED.

MORRISSEY, C. J., dissents for the reasons stated in the former opinion.

HAMER, J., dissents.