55 So.2d 126

**EAGLE MOTOR LINES, Inc. v. HOOD.**

**6 Div. 196.**

Supreme Court of Alabama.

Oct. 11, 1951.

Rehearing Denied Nov. 15, 1951.

London & Yancey, Geo. W. Yancey and Reid B. Barnes, all of Birmingham, for appellant.

Maurice F. Bishop, Birmingham, for appellee.

FOSTER, Justice.

On January 8, 1947, plaintiff's intestate was killed in a collision of the car, in which he was riding as a passenger, with a truck parked on the highway at night, alleged to be without the required signals, flares or reflectors. The truck belonged to one Clements, who had charge of its operation. One Hawkins accompanied Clements on the truck.

The question of primary dispute was whether Clements was the agent of defendant. Hawkins made all the arrangements with respect to the transaction. Defendant, to whom we will refer as Eagle, was an irregular route carrier, engaged in interstate commerce, and had I.C.C. and A.P. S.C. certificates as such. It owned no equipment for carriage, but leased the units from others owning them. Those leases were usually in writing, but not always, and some of them were made by the year or on a permanent basis, and some for a certain trip or trips sometimes called "spot". Eagle had a permanent lease with Hawkins for his unit, on which was printed "Eagle Motor Lines, Inc. J. O. Hawkins." That truck was not used on the trip in question but was in the shop being repaired. The Clements' truck had been used at times by Eagle on "spot" leases prior to January 8, 1947. There was no conflict as to those facts. Clements testified without dispute that he had no relations with Eagle in respect to the fatal trip, that he dealt with Hawkins. The evidence showed without conflict that the trip was made for Tillman and Levenson, wholesale merchants in Birmingham, of goods being ·transported from Atlanta, or Conley, Georgia; that they had purchased a certain lot of goods sold as surplus Army supplies located at that point. There is evidence that a trade was made with Hawkins by Tillman and Levenson to use three trucks to transport the lot of goods in January 1947. It was not all hauled on January 8, 1947, but the evidence showed that Hawkins procured three trucks with drivers to do the hauling on that day. Clements was one of the drivers. Hawkins agreed to pay the truck owners seventy-five dollars each for the trip, when the goods were delivered by the three trucks to Tillman and Levenson in Birmingham. Hawkins was paid by Tillman and Levenson on freight bill made out in Hawkins' name, which was done the day after the accident, with Eagle having no connection with it or knowledge of it. This was not the usual procedure by Eagle. The payment to Hawkins was based on I.C.C. rates, and he paid each of the truckers seventy-five dollars. The testimony shows (page 276) that sort of carriage was called "wildcat," since the truckers did not have an I.C.C. permit, but did have an A.P.S.C. permit. There was produced a carbon copy of a log-book kept by Fortner, the driver of one of the trucks which was owned by Brown, and it contained a memorandum showing the truck on lease to Eagle for each day from January 1st to 4th, and showed no lease for January 5th to 11th, but it was marked as being on lease to Eagle for January 12th to 17th. All interstate truck carriers should have had an I.C.C. certificate and an A.P.S.C. permit plate (page 208).

The truckers operating January 8, 1947, when the accident occurred, had no I.C.C. permit or certificate, but did have A.P. S.C. permit or certificate. They should have had an I.C.C. certificate also. When they were operating under spot lease to Eagle, it furnished the required authority manifested by a printed cardboard sign with the I.C.C. and A.P.S.C. numbers to be put on the trucks. This was done for each separate trip under such lease (pages 222-3).

The evidence shows that when Tillman and Levenson traded with Hawkins for the service, the name of Eagle was not mentioned, though Tillman and Levenson had known of Hawkins soliciting freight for haulage by Eagle. The evidence is that

Eagle knew nothing of the transaction until after the accident and had no record of it. When a leased truck went on a trip for Eagle, a dispatcher made a record of it, issued a mileage trip ticket to be made out and returned filled in as to mileage to be sent to the State Department of Revenue. No such ticket was shown. No record of any sort appeared on the books of Eagle as to that transportation. Hawkins handled the entire transaction.

As to the February transportation, the evidence shows that Hawkins advised Eagle as to the opportunity to make the haulage and that he had been hauling it "on his own," but got afraid of the deal and turned it over to Eagle.

The truckers furnished everything for the trip on lease with Eagle, except the I.C.C. certificate of operation and A.P. S.C. plates (pages 209, 211). Such truckers received a percentage of the charges for carriage on their own trucks. There is evidence that they were authorized to solicit goods for carriage by Eagle from the public trade. Whether that means each driver for his own truck is disputed by counsel in argument. The evidence as to that contention seems to support appellant.

Of course Hawkins could have personally handled the transportation January 8, 1947 on his own account, without violating his duty to Eagle, since his truck was out of commission, and have caused Eagle to handle the balance of it in February 1947, after his truck came back into operation. That is what occurred according to the testimony. Eagle knew of the availability of the goods for haulage in February on information given by Hawkins. There was no transaction with Tillman and Levenson, except the one made with Hawkins.

Evidence of insurance by one or the other covering the trip might be material. 65 C.J.S., Negligence, § 235, page 1058; 45 Corpus Juris 805, page 1244, note 25; Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757; Ex parte Rowell, 248 Ala. 80, 26 So.2d 554. It does not clearly appear that either had insurance, or that its terms would be material.

There is no estoppel involved since the deceased's claim was not based in reliance upon the agency of Hawkins, induced by Eagle. Estoppel is not claimed by appellee.

It is clear that Eagle had no information about the transaction until after the accident. If Hawkins was authorized to solicit the haulage of freight for Eagle, that did not support a claim that he had implied power to engage a truck owned by another for the trip to be made in violation of I.C.C. regulations, and make a contract different from that usually made by Eagle with the truckers. The evidence is that he had no such power. If Hawkins was an agent of Eagle to solicit freight, he had no implied right to make Clements an agent for Eagle. The evidence is that he had no such authority.

The only authority of Hawkins as an agent of Eagle, which we find supported by any inference from the evidence, is to drive his own truck under lease to Eagle, when dispatched on business for Eagle, and to solicit the haulage of freight by Eagle. He would have no interest in soliciting haulage by Eagle in some other trucks, as to which the haulage charges would not concern him. But if his authority to solicit goods for haulage extended to other trucks operated by Eagle, that would not imply authority in him to engage trucks for the haulage not then under lease to Eagle. We think it means haulage in his own truck for Eagle.

█ We recognize the principle that when an agent in the ordinary conduct of the business of the principal is known to the principal to need a subagent, such agent has the implied authority to appoint a subagent to aid him in performing his duties, and such subagent thereby becomes an agent of the principal. Insurance Co. of North America v. Thornton, 130 Ala. 222, 30 So. 614, 55 L.R.A. 547. But we find the principle not effective here.

█ In our opinion, it is not a fair inference to draw from the evidence that in fact Hawkins was undertaking to set for Eagle on January 8, 1947. He had no truck available which he could drive in Eagle's

business. The haulage in other trucks by Eagle would not benefit him. He knew that when he solicited and accepted the business from Tillman and Levenson. He gave Eagle no information about it. He secured three trucks not bound to Eagle. He made a different contract with the truckers than that which Eagle made in the course of his business. He conducted a "wildcat" operation not authorized by law. Eagle never ratified nor accepted the benefits of the transaction, and had no knowledge of it until after the accident. There can be no ratification without knowledge. The subsequent haulage by Eagle in February was not a ratification of Hawkins' conduct in respect to the haulage in January.

To be a ratification by one it is necessary that the act ratified be in the name of that person, though without his authority. 2 C.J.S., Agency, § 34, page 1068, 1069. But one may adopt as his own the conduct of another not done in the name of the former. 2 C.J.S., Agency, § 34, page 1071. There is nothing here to indicate an adoption by Eagle of the haulage by Hawkins conducted January 8, 1947, when Hawkins turned over to Eagle the order for the February haulage. The haulage in February was done nearly a month after the first was done.

There is no evidence that Eagle knew the nature of the Hawkins deal with Tillman and Levenson, or under what circumstances the hauling was done by Hawkins. Knowledge is necessary to a ratification. Gillespie, Shields & Co. v. I. Berman & Son, 212 Ala. 72, 101 So. 681. Hawkins was one of the truckers in the February hauling, using his own truck then under lease to Eagle.

It seems to us the only solution of the matter is that when the trade was made Hawkins had no right to engage for Eagle trucks not then under lease to Eagle to do the hauling for Eagle who knew nothing about it, but the only way he could profit by the transaction, while his truck was out of commission, was to handle it on his own personal account, which he seems to have done. So that he then engaged three trucks on his own account, not under lease to Eagle, and made a special trade with them for seventy-five dollars, which would not have been the trade if Eagle were the carrier according to Eagle's custom. He certainly made no representation that he was acting for Eagle. It must therefore be inferred from the circumstances if it is found to have been so. In our opinion the circumstances do not justify that inference.

The question here is the real situation as to the relations between Eagle and Hawkins. All the direct evidence is that on January 8, 1947, when the accident occurred, neither Clements driving the truck nor Hawkins riding in it was the agent of Eagle in making the trip. We think the other evidence does not justify a contrary finding as to the true nature of their relations on that occasion. It resembles Hawkins v. Barber, 231 Ala. 53, 163 So. 608; Alabama Power Co. v. Key, 224 Ala. 286, 140 So. 233.

There was reversible error in refusing the affirmative charge requested by appellant.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and SIMPSON, JJ., concur.

On Rehearing.

FOSTER, Justice.

Application for rehearing overruled.

LIVINGSTON, C. J., and SIMPSON, and GOODWYN, JJ., concur.