PATRICK J. STOLMEIER AND LAURA L. STOLMEIER, APPELLEES, V.
JERRY C. BECK ET AL., APPELLANTS.

441 N.W.2d 888

Filed June 30, 1989.    No. 87-679.

Donald C. Hosford, Jr., of Crossman, Norris & Hosford, for appellants.

Patrick J. Stolmeier, of Law Office of Patrick J. Stolmeier, and Bruce Brodkey for appellees.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and McGINN, D.J.

WHITE, J.

This action originated as a claim by the plaintiffs-appellees against the defendants-appellants for the return of funds invested with the appellants. A number of causes of action were alleged, but ultimately only the theory of breach of contract by the organization defendants was submitted to the jury. The jury returned a verdict of $20,000 against all organization defendants. The appellants contend the Douglas County District Court erred in overruling the motions of the defendants for a directed verdict or dismissal made at the end of plaintiffs' case and at the close of all the evidence, and in overruling their motion for judgment notwithstanding the verdict.

In determining the sufficiency of evidence to sustain a jury verdict, the evidence must be considered most favorably to the successful party and every controverted fact resolved in favor of that party. The successful party is entitled to the benefit of any inferences reasonably deducible from the evidence. A jury's verdict will not be disturbed unless it is clearly wrong. *Zwygart v. State,* 230 Neb. 128, 430 N.W.2d 301 (1988); *Maloney v. Kaminski,* 220 Neb. 55, 368 N.W.2d 447 (1985). In view of this standard of review, the record establishes the following facts.

In January and February 1983, Jerry C. Beck, one of the original defendants in this action and the brother-in-law of Laura L. Stolmeier, telephoned the Stolmeiers at their home in San Antonio, Texas. Beck represented that he had recently begun a business which consisted of investing in real estate. Beck stated that he was associated with a group of people in Omaha, Nebraska, who also participated in this investment enterprise. Beck asserted that he was the "day-to-day" manager

of a number of organizations that invested in dilapidated properties. The organizations would purchase the properties very inexpensively and then renovate them for profit. Beck assured the Stolmeiers that if they agreed to invest, their investment would double every 6 months.

In early 1983 the plaintiffs made their first $2,000 investment by sending a money order payable to Beck. Beck said that this money would be put through the organization into the various properties to assist in their renovation.

From April 1 through July 21, 1984, the plaintiffs invested an additional $18,000 into the organization by writing checks payable to Beck. The checks were deposited into a bank account at First Westside Bank in Omaha. At trial, it was established that checks were drawn on that account subsequent to the deposit of the Stolmeiers' investment. These checks were applied to real estate either owned or controlled by the defendant companies.

At the time of the initial investment, the principals of the companies were involved in the business of renovating real property for resale. From February through June 1983, during which time the majority of the plaintiffs' money was invested, the principals of the defendant companies executed documents creating either partnerships or a corporation for their business venture.

All of the defendants knew that the plaintiffs' money had been invested through Beck, who was admittedly the general manager of the real estate development scheme. In addition, the defendants knew that the money deposited by Beck into the First Westside Bank account was used to finance the operating account of the investment enterprise.

Because the plaintiffs' investment was not being applied to any one property, Patrick J. Stolmeier requested a guaranteed rate of return on the investment, and the parties entered into another agreement to that effect. As they had seen none of their investment returned as promised, on December 27, 1984, the Stolmeiers began demanding that the money they had invested be returned to them. This request was made to all the defendants. The money was not returned, and this suit ensued.

The theory of the plaintiffs is that the defendant Beck

contacted the Stolmeiers and represented himself as the managing partner of the organization defendants. Further, the Stolmeiers allege that in soliciting their investment, Beck was acting as an agent for those defendants. Because the named organization defendants include both a corporation and partnerships, the law applicable to each of these legal entities must be examined.

The organization defendants involved in this appeal are four partnerships and one corporation. The partnerships are R & R Enterprises, doing business as Group V Properties, and 5201 Partnership, both in existence at the time of the Stolmeiers' original investment; Essex Investments; and Beckmorr Properties. The latter two were formed subsequent to the original investment. Group V Management and Development Company is the corporate defendant. This corporation was formed after the Stolmeiers' initial investment was solicited by Beck.

In order to determine the law applicable to the various partnership and corporate defendants, a distinction must be made between the organizations on the basis of when they were formed. Our analysis will begin with the only corporate defendant in this case, Group V Management and Development.

The Stolmeiers predicate the liability of the corporation on the actions of Beck. The plaintiffs allege that Beck was an agent and subsequently an officer of the corporation, and therefore his acts are chargeable to the corporation. Group V Management and Development contends that the corporation cannot be liable for the actions of Beck as an agent, as the corporation was not in existence at the time of the actions of Beck and, therefore, there was no principal in existence for whom Beck could have been an agent. While it is true that no corporation was in existence at the time Beck arranged to have the Stolmeiers invest in the enterprise, by soliciting money on behalf of the corporation to be formed, Beck was acting as a promoter for the corporation. Although promoters of a corporation are not in any legal sense its agents before it comes into existence, a corporation can bind itself to the contracts made by promoters by taking, or failing to take, certain action.

In the absence of a subsequent adoption by the corporation, a contract made by a promoter is not binding on the corporation. *Kridelbaugh v. Aldrehn Theatres Co.*, 195 Iowa 147, 191 N.W. 803 (1923). See, also, 18 C.J.S *Corporations* § 122 (1939). However, a contract made by a promoter for a corporation may be adopted by the corporation after it comes into existence. *M'Arthur v. Times Printing Co.*, 48 Minn. 319, 51 N.W. 216 (1892); *Decker v. Juzwik*, 255 Iowa 358, 121 N.W.2d 652 (1963). This adoption may be by express corporate action, or it may be established by implication from the conduct of the corporation. Particularly pertinent to this action, where the corporation voluntarily accepts the benefits accruing to it from the engagement of its promoters, after full knowledge and having the opportunity to decline the same, it is to be regarded as adopting the contract. *Panich v. Curtis, Owen, Fuller Corporation*, 124 S.W.2d 619 (Mo. App. 1938).

In the present case, Group V Management and Development, through its officers, knew that Beck had obtained money from the Stolmeiers for use by the corporation in its business of renovating older buildings for investment purposes. The Stolmeiers adduced evidence that the money invested by them was placed in an account at First Westside Bank in Omaha and then was used by the corporation in operating its business. Through these actions, the corporation adopted the burdens and benefits of the contract made by Beck on behalf of the corporation, and is now properly held responsible for the breach of the agreement made by Beck on behalf of the corporation.

Of the four partnership defendants remaining, two were formally established after the solicitation by Beck. R & R Enterprises and 5201 Partnership were in existence at the time of the Stolmeiers' initial investment. The legal rules applicable to agency relationships also apply to partnerships. Neb. Rev. Stat. § 67-304(3) (Reissue 1986). Regarding the liability of R & R Enterprises and 5201 Partnership, an examination of agency law must be undertaken.

Defendant Beck represented himself as acting on behalf of an organization investing in real estate. He was requesting money from the Stolmeiers for investment in the various

partnerships. While it is true that an agency relationship cannot be proven through the acts, declarations, or conduct of the agent, *Wolfson Car Leasing Co., Inc. v. Weberg*, 200 Neb. 420, 264 N.W.2d 178 (1978), there was other evidence establishing the existence of an agency relationship, including the testimony of members of the organization. Further, the partnerships received the benefits of the contract entered into by Beck. At trial it was established that the money solicited from the Stolmeiers was used by the organization defendants in the renovation of their properties. Where a principal accepts the benefits of a contract executed for him by an agent, he is bound by agreements made by the agent to procure such contract. *Nye-Schneider-Fowler Grain Co. v. Hopkins*, 99 Neb. 244, 155 N.W. 1097 (1916). Further, affirmance of an agent's unauthorized transaction can be inferred from the principal's failure to repudiate it. *Bank of Valley v. Shunk*, 215 Neb. 25, 337 N.W.2d 118 (1983). In this case, Beck's guarantee to the Stolmeiers that they would receive a return on their investment is binding on the principals, R & R Enterprises and 5201 Partnership, as they knew of the money solicited from the Stolmeiers and utilized the funds in conducting their business. While there was no express ratification of the acts of Beck, when the other members of the partnerships were informed of Stolmeiers' dissatisfaction with the investment, no effort was made to repudiate the fact that Beck had the authority to solicit money on behalf of the partnerships. In fact, assurances were made to Patrick Stolmeier that the organization would see what it could do to return the money he invested. Therefore, both R & R Enterprises and 5201 Partnership are equally obligated to pay for the breach of the contract entered into on their behalf by Beck.

Two defendants in this action remain to be discussed, both of them partnerships not yet in existence at the time of the Stolmeiers' initial investment. An agent cannot represent partnerships or corporations which do not exist. Because these organizations were not in existence at the time of the transactions, it cannot be said that merely because they retained the benefits of the transactions entered into by Beck, they therefore ratified the actions of Beck. Ratification is the

acceptance of a previously unauthorized contract and takes effect from the making of such a contract. A ratification therefore presupposes the existence of a person on whose behalf the contract might have been made at the time. See *Clubb Testing Service, Inc. v. Singletary*, 395 S.W.2d 956 (Tex. Civ. App. 1965).

This fact, however, does not prevent our affirmance of the jury verdict. While a ratification presupposes the existence of a person on whose behalf the contract might have been made at the time, an adoption may be made by a person who had no legal existence at the time the contract was made on his behalf. 2A C.J.S. *Agency* § 64 (1972); *Eagle Motor Lines v. Hood*, 256 Ala. 395, 55 So. 2d 126 (1951); *M'Arthur v. Times Printing Co.*, 48 Minn. 319, 51 N.W. 216 (1892). The facts supporting an inference of an adoption in the case of the remaining partnerships are the same as those delineated in the section discussing the liability of the corporation for Beck's preincorporation actions. Because there is no error in the jury verdict from the district court, the judgment is affirmed.

AFFIRMED.