IN RE APPLICATION OF CN CARRIERS, INC.
CN CARRIERS, INC., APPELLEE, V. WHEELER TRANSPORT SERVICE,
INC., ET AL., APPELLANTS.

510 N.W.2d 545 .

Filed August 31, 1993.·   No. A-92-103.

Jack L. Schultz and Gregory D. Barton, of Harding &

Ogborn, for appellants.

Theodore L. Kessner, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

SIEVERS, Chief Judge, and IRWIN and WRIGHT, Judges.

WRIGHT, Judge.

Wheeler Transport Service, Inc.; Wynne Transport Service, Inc.; and Central Transportation Co., Inc., (all hereinafter protestants) timely appeal from an order of the Nebraska Public Service Commission (PSC) which affirmed the PSC's previous order granting the application of CN Carriers, Inc. (CN), to transfer the common carrier operating rights of Schroetlin Tank Line, Inc. (Schroetlin), to CN. Protestants assign as error the PSC's determination that Central Co-op Non-Stock Transport (Central Non-Stock) could create a wholly owned subsidiary, CN, for the sole purpose of providing for-hire common carriage to Central Non-Stock's member cooperative associations and the Nebraska shipping public at large without requiring Central Non-Stock to forfeit its exempt status under the provisions of Neb. Rev. Stat. § 75-309.03 (Reissue 1990).

## SCOPE OF REVIEW

In an appeal from an order of the PSC, administrative or legislative in character, the only questions to be determined are whether the PSC acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made. *In re Application of A Touch of Class Limousine*, 243 Neb. 33, 497 N.W.2d 71 (1993).

## FACTS

Central Non-Stock contracted to purchase Schroetlin's intrastate operating authority and applied to the PSC for approval of the proposed transfer of Schroetlin's authority. On February 7, 1991, the Attorney General of the State of Nebraska issued Att'y Gen. Op. No. 11, which concluded that an exempt transportation cooperative is prohibited from acquiring the dual status of a for-hire carrier:

This language [§ 75.309.03], in addition to the

Legislature's limitation of this exception to an entity of this nature engaged in providing transportation services "solely to its member cooperative associations," evinces a legislative intent to preclude the establishment of a "dual status" for such entities as both exempt transportation cooperatives and regulated common or contract carriers.

. . . .

. . . [I]t is our opinion that it would be inconsistent with both the language and intent of § 75-309.03 to allow an entity exempted from Commission regulation as a "transportation cooperative" to also hold a certificate as a common carrier or a permit as a contract carrier.

Central Non-Stock withdrew its application and then formed a wholly owned subsidiary, CN, which issued 30,000 shares of stock to Central Non-Stock, the only shareholder. Central Non-Stock was prepared to finance CN with up to $100,000 in stock issues and would make long-term loans if necessary. Central Non-Stock assigned to CN its right to purchase Schroetlin's authority, and the party executing the assignment was vice president for both Central Non-Stock and CN.

CN filed an application for approval of the assignment of Schroetlin's authority. Protests were timely filed, and a public hearing was held before the PSC on September 9, 1991. The evidence established that all of CN's stock was held by Central Non-Stock and that CN's officers were also officers of Central Non-Stock. All of CN's directors were members of Central Non-Stock's 5-member executive committee, which was comprised of 5 directors who served on Central Non-Stock's 19-member board of directors. Ron Ewoldt was the general manager and would be the registered agent for both Central Non-Stock and CN. Central Non-Stock and CN had the same staff and would operate at the same location.

At the time of the hearing, CN had not conducted any transportation operations and was totally dependent upon a prospective $150,000 long-term loan from Central Non-Stock. CN owned no equipment and intended to lease any necessary equipment from Central Non-Stock. Central Non-Stock would receive all profits earned by CN and all revenues from lease payments on equipment leased and operated under CN's

authority. The purpose of Central Non-Stock's incorporation of CN was to expand its operation to compete with common carriers.

## ANALYSIS

Applications for transferring authority from one common carrier to another are governed by Neb. Rev. Stat. § 75-318 (Reissue 1990). Section 75-318 requires the PSC to determine whether such transfer is consistent with the public interest and does not unduly restrict competition and whether the applicant is fit, willing, and able to properly perform the proposed service. The PSC found that the transfer was "consistent with the public interest and will not unduly restrict competition" and that CN is "fit, willing, and able properly to perform the service proposed."

Protestants contend that the PSC's finding that Central Non-Stock had the power to create a wholly owned subsidiary in order to acquire an intrastate common carrier authority is contrary to the law and is arbitrary, capricious, and unreasonable. Protestants argue that § 75-309.03 precludes a transportation cooperative from maintaining the dual status of an exempt transportation cooperative and a regulated for-hire carrier.

The applicable portion of § 75-309.03 provides that a transportation cooperative consisting of cooperative associations

> may provide transportation service solely to its member cooperative associations without applying for or receiving a certificate or permit from the commission to provide such service if it meets the following requirements:
>
> (a) The transportation cooperative has no greater power or purpose other than to provide service to its member cooperative associations;
>
> . . . .
>
> (e) The transportation cooperative provides transportation service solely to its member cooperative associations;
>
> . . . .
>
> (4) If a transportation cooperative operates as a for-hire

carrier in violation of this section, the transportation cooperative shall no longer qualify to furnish transportation service as provided in this section and shall be subject to the penalties provided in sections 75-155 and 75-322.02 to 75-322.04 for operating as a common or contract carrier without a certificate or permit.

The Supreme Court in *In re Application of E. Neb. Non-Stock Trucking Coop*, 243 Neb. 662, 501 N.W.2d 712 (1993), decided the question whether a transportation cooperative described in § 75-309.03 could ever obtain a certificate as a common carrier. "[T]he granting of common carrier status to a transportation cooperative is inconsistent with the plain language of § 75-309.03(1)(a)." 243 Neb. at 665, 501 N.W.2d at 714. Prior to the decision in that case, the question raised by protestants was whether a transportation cooperative which applied for and received a certificate to operate as a common carrier would lose its exempt status under § 75-309.03. This question was based upon the proposition that the PSC has original jurisdiction and the sole power to grant common carrier certificates and that such proceedings are administrative and legislative in character. See *In re Application of E. Neb. Non-Stock Trucking Coop, supra.*

In *In re Application of E. Neb. Non-Stock Trucking Coop, supra*, the Supreme Court affirmed the PSC's order dismissing Eastern Nebraska's application. One of Eastern Nebraska's purposes was to provide transportation and related services to its member cooperatives. Eastern Nebraska filed an application with the PSC for authority as a common carrier for the transportation of property and for the transfer of the trucking permit of Edwin Ackley.

The PSC dismissed Eastern Nebraska's application based upon Att'y Gen. Op. No. 11, *supra*. The PSC quoted part of the opinion that " 'it would be inconsistent with both the language and intent of § 75-309.03 to allow an entity exempted from Commission regulation as a "transportation cooperative" to also hold a certificate as a common carrier or a permit as a contract carrier.' " *In re Application of E. Neb. Non-Stock Trucking Coop*, 243 Neb. at 664, 501 N.W.2d at 713.

The court affirmed the PSC's dismissal of Eastern Nebraska's application and held:

> The requirement of the statute is clear and is dispositive of the issue before us. To qualify as a transportation cooperative under § 75-309.03(1)(a), the transportation cooperative may have no greater power or purpose than to provide service to the member cooperative associations. The provision of common carrier services to members of the public would vest a transportation cooperative with greater power than to provide service to the member cooperative associations. Therefore, we hold that the granting of common carrier status to a transportation cooperative is inconsistent with the plain language of § 75-309.03(1)(a).

> Because common carrier status is inconsistent with Eastern's status as a transportation cooperative, the PSC's order dismissing Eastern's application is reasonable and not arbitrarily made.

243 Neb. at 665, 501 N.W.2d at 714.

In the present case, Central Non-Stock formed a wholly owned subsidiary, CN, and assigned CN its right to purchase Schroetlin's authority. The issue presented is whether Central Non-Stock may do indirectly that which it may not do directly. We note that a corporate entity may be disregarded and held to be merely the alter ego of a shareholder or shareholders in various circumstances where necessary to prevent fraud or other injustice. *United States Nat. Bank of Omaha v. Rupe*, 207 Neb. 131, 296 N.W.2d 474 (1980). Here, we are not dealing with an attempt by creditors to pierce the corporate veil, but with whether it would be unjust to treat Central Non-Stock and CN, its wholly owned subsidiary, as separate corporations.

The PSC acknowledged that the question was whether the creation of CN was truly separate and distinct enough from Central Non-Stock so that no violation of the statute existed, or, in other words, "[I]s there . . . an impermissible 'dual status' because of Central Non-stock's role in the control and operations of CN if CN's application is granted?" The PSC stated, "We are persuaded by the evidence that, as a wholly owned subsidiary, CN is separate and distinct from Central

Non-stock and therefore there is no violation of §75-309.03." The PSC concluded that "a transportation cooperative can break off and form a wholly owned subsidiary corporation, operate it, direct it, finance it, manage it, etc. as a certificated common carrier."

We therefore examine the evidence upon which the PSC determined that CN was separate and distinct from Central Non-Stock. We cannot disturb the findings of the PSC unless it appears that the result reached "cannot reasonably be derived from the facts proved." *In re Lincoln Traction Co.*, 103 Neb. 229, 244, 171 N.W. 192, 197 (1919). The PSC found that the relationship between Central Non-Stock and CN was not so intertwined as to constitute an impermissible dual status because of the role played by Central Non-Stock in CN. We do not think this result can be derived by the PSC from the facts.

The only basis for distinguishing CN from Central Non-Stock is a different telephone number and different customer billing and accounting. In our opinion, such facts do not form a reasonable basis for the PSC's conclusion that CN was a separate and distinct corporation from Central Non-Stock. Where a corporation operates as a mere instrumentality or shell dominated and controlled by its owners, the corporate forum may be disregarded. The alter ego doctrine is based in equity. *Brown v. Alron, Inc.*, 223 Neb. 1, 388 N.W.2d 67 (1986). Thus, under the instrumentality, or alter ego, doctrine, when a corporation is so dominated by another corporation that the subservient corporation becomes a mere instrument and is indistinct from the controlling corporation, the corporate veil of the dominated corporation will be disregarded if it will result in injustice to retain the corporate veil. *Omaha Pollution Control Corp. v. Carver-Greenfield*, 413 F. Supp. 1069 (D. Neb. 1976). Here, the injustice would be circumvention of § 75-309.03 by creating a wholly owned subsidiary.

In *Hayes v. Sanitary & Improvement Dist. No. 194*, 196 Neb. 653, 244 N.W.2d 505 (1976), the Supreme Court held that separate corporate existence of the parent and subsidiary or affiliated corporations will not be recognized when the subsidiary is so organized and controlled and its business

conducted in such a manner as to make it merely an agency, instrumentality, adjunct, or alter ego of another corporation. In *Hayes*, a Nebraska corporation was a wholly owned subsidiary of a Minnesota corporation. The employees of the Nebraska corporation were paid out of the payroll account of the Minnesota corporation, with the Nebraska corporation then reimbursing the parent company. There was an almost total interlocking of officers and directors of the two corporations, which maintained separate books and filed separate income tax returns.

In *Massachusetts Bonding & Ins. Co. v. Master Laboratories*, 143 Neb. 617, 627-28, 10 N.W.2d 501, 506 (1943), the court stated:

> The supreme court of the United States has laid down the rule which has the sanction of the authorities generally, that, where the difference between corporations is reduced to [a] mere matter of bookkeeping, such corporations cease to have separate legal entities and will, in the interest of justice, be treated as one.

The only differences between CN and Central Non-Stock were the proposed billing and accounting systems and separate telephone numbers. As pointed out by protestants, the dispatching system was not truly separate because Ewoldt, the general manager of both Central Non-Stock and CN, would probably handle most of the dispatching for both entities. Having reviewed the record and the evidence presented to the PSC, we find that the PSC's determination that Central Non-Stock and CN were separate corporations was arbitrary and not supported by the evidence.

Section 75-318 requires the PSC, in considering a transfer application, to determine whether the transfer is "consistent with the public interest." The PSC's finding that the transfer from Schroetlin to CN was consistent with the public interest is arbitrary and unreasonable, because we find that CN was not a separate and distinct corporation from Central Non-Stock. "Consistent with the public interest" has been held to mean not contrary to the public policy of the state. "The term 'consistent with the public interest' is quite different in its meaning than the term 'public convenience and necessity.' The former means only

that the proposed contract carrier service does not conflict with the legislative policy of the state . . . ." *Samardick of Grand Island-Hastings, Inc. v. B.D.C. Corp.*, 183 Neb. 229, 236-37, 159 N.W.2d 310, 316 (1968). The granting of common carrier status to CN was inconsistent with the plain language of § 75-309.03(1)(a). See *In re Application of E. Neb. Non-Stock Trucking Coop*, 243 Neb. 662, 501 N.W.2d 712 (1993).

Accordingly, we find that the PSC acted arbitrarily and unreasonably in granting the application of CN, and we reverse the PSC's order of January 14, 1992, and remand the cause to the PSC for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.