BLUE CREEK FARM, INC., APPELLANT, V. AURORA COOPERATIVE ELEVATOR COMPANY, APPELLEE.

614 N.W. 2d 310

Filed July 14, 2000.   No. S-99-608.

Neil E. Williams, of Lane & Williams, P.C., for appellant.

David A. Jarecke, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Appellant, Blue Creek Farm, Inc. (Blue Creek), brought this action seeking a declaration that its contractual obligation to deliver corn to appellee, Aurora Cooperative Elevator Company (Aurora), between March 1 and 31, 1996, had expired. Blue

Creek further sought a declaration that each party's obligations under the contracts were excused by Aurora's attempt to invoke the contracts' force majeure provisions. The district court for Hamilton County determined that time was not of the essence and that an 11-day delay in performance was reasonable and, therefore, dismissed Blue Creek's claim. We affirm.

## BACKGROUND

Under two separate grain purchase contracts, Blue Creek agreed to sell and Aurora agreed to buy a total of 25,000 bushels of No. 2 yellow corn. Although the contracts were executed in January and October 1995, both contracts specified that the seller would deliver the corn to Aurora's elevator at Chapman, Nebraska, between March 1 and 31, 1996. Because of a shortage in railcar availability, however, Aurora was not able to take delivery in March 1996.

Blue Creek's president, Larry Paschke, testified that he called Aurora on several occasions during the month of March 1996 to obtain permission to deliver the corn. Each time he contacted Aurora, however, he was informed that Aurora could not accept delivery of Blue Creek's corn.

On March 29, 1996, Aurora sent a letter informing Blue Creek that Aurora was extending the contracts with Blue Creek for an additional 30 days due to the delay of rail carrier service. The letter from Aurora to Blue Creek stated:

> Pursuant to paragraph 4 of the grain contract(s) . . . we are extending such contract(s) for an additional 30 days due to the delay of rail carrier service. We are making efforts to accept delivery of these contracts and you may wish to contact your local elevator for delivery if you have not already done so. If you have any questions concerning these contracts, please call Verda at 402-694-2106 or 800-642-6795.

Paragraph 4 on each of the grain contracts, referenced in Aurora's letter, provided that "[b]uyers performance under this contract is contingent upon conditions beyond buyers control, such as, but not limited to, labor disputes, and disturbances, accidents, fire, delay of carriers, act of god or war."

On Monday, April 1, 1996, railcars were available and Allen Boltz, an employee of Aurora, called Paschke to request that

Blue Creek immediately begin its delivery. Paschke testified that he was working in the field on April 1, however, and did not receive the message until too late in the day to do anything about it. On April 2, Aurora called Paschke to inform him that Blue Creek was not to deliver its corn because the railcars were now full. On April 10, Aurora sent Blue Creek's attorney written authorization for Blue Creek to begin delivery immediately. Blue Creek made its first delivery on April 11, and its last delivery on April 16. Before trial, the parties stipulated that Blue Creek had delivered the corn to Aurora without prejudice to Blue Creek's claim.

## ASSIGNMENTS OF ERROR

Blue Creek assigns as error the district court's failure to determine that (1) Aurora repudiated the contracts by attempting to invoke their "force majeure" clauses and (2) Blue Creek had the option of treating the contracts as terminated due to Aurora's repudiation.

## STANDARD OF REVIEW

In a bench trial of a law action, a trial court's findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous. *Schwarz v. Platte Valley Exterminating*, 258 Neb. 841, 606 N.W.2d 85 (2000).

## ANALYSIS

Blue Creek argues that paragraph 4 on each of the grain contracts is a force majeure provision. In general, a force majeure provision is a contractual provision that allocates the risk if performance becomes impossible or impracticable as a result of an event or effect that the parties could not have anticipated or controlled. See Black's Law Dictionary 657 (7th ed. 1999). Blue Creek argues that once Aurora invoked the contracts' force majeure provisions, Aurora repudiated its contractual obligations and gave Blue Creek the option of treating the contracts as terminated. Aurora contends that it did not repudiate the contracts, but merely delayed performance by a reasonable amount of time.

Blue Creek's argument, that Aurora's exercise of the force majeure provisions resulted in a repudiation of the executory contracts, is similar to the argument made in *Crowder v. Aurora*

*Co-op Elev. Co.*, 223 Neb. 704, 393 N.W.2d 250 (1986). In *Crowder*, a farmer sued Aurora for damages caused by Aurora's alleged anticipatory breach of a grain contract when Aurora refused delivery of contracted corn. Likewise, Blue Creek sued Aurora for alleged anticipatory breach of the grain contracts when Aurora allegedly invoked the force majeure provision to excuse its performance under the contracts.

In *Crowder*, we set forth the pertinent law on anticipatory repudiation of a contract for the sale of goods:

"When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may

"(a) for a commercially reasonable time await performance by the repudiating party; or

"(b) resort to any remedy for breach (Section 2-703 or Section 2-711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and

"(c) in either case suspend his own performance or proceed in accordance with the provisions of this article on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (Section 2-704)." Neb. U.C.C. § 2-610 (Reissue 19[92]).

Comment 1 to § 2-610 states: "[A]nticipatory repudiation centers upon an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance." Additionally, comment 2 for § 2-610 contains: "It is not necessary for repudiation that performance be made literally and utterly impossible. Repudiation can result from action which reasonably indicates a rejection of the continuing obligation." See, also, *Hooker and Heft v. Estate of Weinberger*, 203 Neb. 674, 680-81, 279 N.W.2d 849, 853 (1979) ("An anticipatory breach of contract is one committed before the time has come when there is a present duty of performance and is the outcome of words or acts evincing an intention to refuse performance in the future"); *Selig v. Wunderlich Contracting Co.*, 160 Neb.

215, 222, 69 N.W.2d 861, 867 (1955) (" 'Where a party bound by an executory contract repudiates his obligation before the time for performance, the promisee has . . . an option to treat the contract as ended so far as further performance is concerned . . .' ").
223 Neb. at 712-13, 393 N.W.2d at 257.

The court in *Crowder* determined that whether Aurora had repudiated its agreement was a question of fact for the jury. In this case, we also conclude that whether Aurora repudiated the contracts by sending the letter to Blue Creek which referenced paragraphs 4 was a question of fact.

In an appellate review of a bench trial in a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Vistar Bank v. Thompson*, 253 Neb. 166, 568 N.W.2d 901 (1997). In a bench trial, the trial court's entry of judgment in favor of a certain party warrants the conclusion that the trial court found in the party's favor on all issuable facts. *Peterson v. Kellner*, 245 Neb. 515, 513 N.W.2d 517 (1994).

In finding for Aurora, the trial court impliedly found that the letter from Aurora to Blue Creek did not constitute a repudiation of the contracts. We agree. The letter evinces no intention on the part of Aurora not to perform its obligations under the contracts. Rather, it informs Blue Creek that although it intends to perform, its performance will be delayed by up to 30 days. Even Paschke, when questioned, could not testify that the letter suggested that Aurora would not honor the contract. On cross-examination, Paschke was asked to read the language of the letter quoted above. When asked where in that language the letter suggested that Aurora would not honor the contract or would not take receipt of Blue Creek's corn, Paschke answered, "I see no place in there."

## CONCLUSION

We conclude that the district court was not clearly erroneous in finding that Aurora did not repudiate the contracts by sending the letter informing Blue Creek that it intended to delay performance by 30 days. Therefore, we need not reach Blue Creek's second assignment of error.

AFFIRMED.