Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/25/2020 01:08 AM CDT

- 739 -

**Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports**
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

**Marjorie Moss, appellee, v. Associated
Underwriters, Inc., et al., appellants.**

___ N.W.2d ___

Filed August 18, 2020.    No. A-19-380.

1. **Corporations: Equity: Liability.** Proceedings seeking disregard of a
   corporate entity, that is, piercing the corporate veil to impose liability
   on a shareholder for a corporation's debt or other obligation, are equi-
   table actions.
2. **Equity: Appeal and Error.** In an appeal of an equity action, an appel-
   late court tries factual questions de novo on the record, reaching a con-
   clusion independent of the findings of the trial court.
3. **Evidence: Appeal and Error.** Where credible evidence is in conflict
   on a material issue of fact, the appellate court considers and may give
   weight to the circumstances that the trial judge heard and observed the
   witnesses and accepted one version of the facts rather than another.
4. **Damages.** As a general rule, a party may not have double recovery for
   a single injury, or be made more than whole by compensation which
   exceeds the actual damages sustained.
5. **Actions.** Where several claims are asserted against several parties for
   redress of the same injury, only one satisfaction can be had.
6. **Corporations: Liability: Appeal and Error.** Generally, a corporation
   is viewed as a complete and separate entity from its shareholders and
   officers, who are not, as a rule, liable for the debts and obligations of
   the corporation.
7. **Corporations: Fraud.** A court will disregard a corporation's identity
   only where the corporation has been used to commit fraud, violate a
   legal duty, or perpetrate a dishonest or unjust act in contravention of the
   rights of another.
8. **Corporations.** A corporation's identity as a separate legal entity will
   be preserved, as a general rule, until sufficient reason to the con-
   trary appears.

- 740 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

9. **Corporations: Proof: Fraud.** A plaintiff seeking to pierce the corporate veil must allege and prove that the corporation was under the actual control of the shareholder and that the shareholder exercised such control to commit a fraud or other wrong in contravention of the plaintiff's rights.

10. **Corporations: Liability: Proof: Fraud: Debtors and Creditors.** A plaintiff seeking to impose liability for a corporate debt on a shareholder has the burden to show by a preponderance of the evidence that the corporate identity must be disregarded to prevent fraud or injustice to the plaintiff.

11. **Trial: Evidence: Witnesses: Appeal and Error.** All conflicts in the evidence, expert or lay, and the credibility of the witnesses are for the fact finder and not for the appellate court.

12. **Corporations: Words and Phrases.** Horizontal veil piercing occurs when a limited liability entity is considered to be the alter ego of another limited liability entity with the same owner.

13. **Corporations: Debtors and Creditors.** Under the concept of horizontal veil piercing, a creditor with a claim against one of the limited liability entities seeks to disregard corporate separateness between the entities to reach assets belonging to both.

14. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

15. **Costs: Appeal and Error.** The decision of a trial court regarding taxing of costs is reviewed for an abuse of discretion.

16. **Costs.** Costs of litigation and expenses incident to litigation may not be recovered unless provided for by statute or a uniform course of procedure.

Appeal from the District Court for Sarpy County: MICHAEL A. SMITH, Judge. Affirmed in part, and in part reversed.

Kathryn J. Derr, of Berkshire & Burmeister, for appellants.

John P. Weis and Andrew Wurdeman, Senior Certified Law Student, of Wolfe, Snowden, Hurd, Ahl, Sitzmann, Tannehill & Hahn, L.L.P., for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

- 741 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

Riedmann, Judge.

## INTRODUCTION

The appellants appeal the judgment of the district court in favor of Marjorie Moss on her claims of piercing the corporate veil and successor liability. We reverse the award of $22,000 of taxable costs awarded to Moss. However, finding no error in the court's decision to pierce the corporate veil and hold the appellants jointly and severally liable, we otherwise affirm the district court's judgment.

## BACKGROUND

Moss was an employee of Associated Underwriters, Inc. (AU), and her employment was terminated in 2009. She filed a complaint in the U.S. District Court for the District of Nebraska alleging employment discrimination. In June 2015, a jury awarded her a judgment in the amount of $257,361.56 plus interest, attorney fees, and costs of $138,720.92 for a total of $396,082.48.

After Moss was unable to recover from AU on the federal court judgment, she commenced the instant action in October 2016 in the district court for Sarpy County against AU; Relinco, Inc.; C-Tek Insurance Agency, Inc. (C-Tek); Roll the Bones, LLC; C-Notes, LLC; and Gregory Gurbacki, individually (collectively the appellants). In the causes of action relevant to the issues presented on appeal, Moss sought to hold the appellants liable for the federal court judgment against AU under the theories of piercing the corporate veil and successor liability.

A bench trial was held in November 2018. At the outset of trial, C-Notes was dismissed as a defendant, and trial proceeded against the remaining defendants. The evidence presented revealed that AU was incorporated in 1979 and operated as an independent insurance broker with contracts to sell property and liability insurance through several insurance companies. In 2007, Gurbacki and another individual became shareholders, officers, and directors of AU. Gurbacki became the sole shareholder in 2011.

- 742 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

To fund the original stock purchase of AU, Gurbacki and his co-owner obtained a loan for $5.9 million. Security State Bank, along with several other banks, took over the loan in 2008. The loan was refinanced in 2010 and was personally guaranteed by Gurbacki. In December 2015, AU sold substantially all of its assets to Farmers National Company for $400,000 and ceased all business activity.

Roll the Bones was formed as a Nebraska limited liability company in 2008. Gurbacki was one of two original members, and he became the sole member in 2010. Roll the Bones obtained a loan of approximately $440,000 in 2008 to purchase a piece of real property. The note was guaranteed by AU and Gurbacki, individually. Roll the Bones initially made interest-only payments, using funds from the initial investments. Once that money was depleted, AU made the $500 per month payments, because it had guaranteed the note, and C-Tek made some payments on the note as well. The real property was sold in a foreclosure sale in 2015, leaving a deficiency balance owed to the bank. C-Tek paid the deficiency to the bank. Thereafter, Roll the Bones had no further business operations or assets.

Relinco was the largest producing asset of AU, operating under a managing general agent agreement with Travelers Indemnity Company. In 2011, Relinco was spun off into its own corporation for the sum of $300,000 plus the assumption of approximately $862,000 in debt directly related to the Relinco business. Gurbacki is the sole shareholder of Relinco. In 2012, Relinco was added as a co-borrower on AU's Security State Bank loan. Relinco began paying management fees to AU of $33,000 per month in order to provide cash for AU to make the loan payments. Relinco also loaned additional money to AU beyond the management fees. Travelers Indemnity Company ended its contract with Relinco, causing Relinco to close in October 2014. As of December 2014, AU owed Relinco $529,000.

Gurbacki Insurance Services, Inc., was incorporated in 2004 and changed its name to C-Tek in 2013. Gurbacki and his wife

each originally owned 33 percent of the shares of C-Tek stock, with the remaining shares divided between their two adult sons. As of January 2016, however, Gurbacki relinquished his shares of C-Tek, leaving his wife as the majority shareholder. Prior to December 1, 2015, C-Tek brokered insurance through AU for which it paid AU a commission.

In June 2014, AU and Relinco began to have difficulty making the loan payments to Security State Bank. Thereafter, as part of a restructuring settlement, C-Tek agreed to guarantee the loan to help AU. According to Gurbacki's wife, adding C-Tek as a guarantor was the best option, because Gurbacki was personally obligated on the loan and because they wanted to get the loan paid in order to protect Gurbacki's assets in the event of foreclosure. In January 2015, AU and Relinco began making interest-only payments, and as of June, the balance of the loan remained more than $4.2 million. In November, AU, Relinco, and C-Tek entered into a forbearance agreement with Security State Bank, wherein the bank agreed to accept $800,000 in satisfaction of the debt, and in exchange, Gurbacki, his wife, and C-Tek were released from the note. The $800,000 that AU paid was comprised of $400,000 from the sale of AU's assets to Farmers National Company and $400,000 from C-Tek.

Chris Best, a certified public accountant, testified at trial, and his report was received into evidence. He testified that AU "was grossly inadequately capitalized" as of June 2015. As of June 30, AU had assets of approximately $279,000 and liabilities greater than $5 million.

Best opined that from a general accounting principle and best business practices point of view, AU, Relinco, and C-Tek were under the control of Gurbacki and did not treat each other as separate entities. According to Best, there were an inordinate number of intercompany transactions with companies making payments for other companies, assets being recorded in the books of one account and being transferred to another account, and the booking of intercompany receivables and payables. Then, when AU ultimately sold its assets to Farmers

- 744 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

National Company, there were significant remaining balances in those intercompany accounts, so the companies were never made whole in terms of what they should have received from AU or AU should have received from the other companies. In Best's 40 years of experience, he has never seen commingling of accounts, interdependency of one entity on the operations of another entity, and interrelationship of companies in the manner and to the extent he saw here.

Specifically, with respect to C-Tek, Best opined that although it was a separate entity, the parties did not treat it as such. He explained that typically a corporation that is a separate entity does not pay the expenses of another entity and certainly does not make loan payments for that entity. He stated that the general ledger of C-Tek for the year ending December 31, 2018, shows more than 60 transactions in which AU paid expenses or made payments on notes for C-Tek. He testified he has never seen that done in any other company he has worked on; thus, in his opinion, that was very unusual and not in the ordinary course of business.

With regard to the Security State Bank loan, Best explained that the bank continued to add entities and take security interests in order to prevent AU from defaulting on the loan. Relinco's assets, which were previously unencumbered, were pledged to the bank, and then C-Tek was brought in. Those actions were done so that AU did not default, which would result in the obligation falling to Gurbacki, personally. Best agreed that the forbearance agreement was a benefit to AU and Gurbacki, who was a personal guarantor on the loan, noting that the agreement itself indicates the parties' acknowledgment that it was a personal benefit to Gurbacki.

Certified public accountant William Kenedy works for the accounting firm who prepared the tax returns for the corporations for years other than 2012 and 2013. He testified that in his experience, it is not uncommon to see companies owned by related parties making intercompany loans back and forth between entities. He opined that it is extremely common to see

- 745 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

intercompany transactions such as loans from one business to the other or one company buying goods or services from the other and having payables back and forth. In his opinion, if the companies have kept track of the intercompany loans, their actions do not constitute commingling of assets. He explained that commingling occurs where there are "two businesses operating out of one set of books," which is not the case here. He did not believe that the level of intercompany transactions between AU, Relinco, and C-Tek was unusually high.

Subsequent to trial, the district court entered a written order. The court found that AU was grossly undercapitalized and insolvent at all relevant times. Even more evident to the court was the disregard of the corporate entities of AU, Relinco, C-Tek, and Roll the Bones. The court concluded that there were repeated instances of shifting of corporate assets and liabilities, with no real discernible benefit to any of the corporations. Further, it determined that there was evidence of corporate assets being made available for the use of Gurbacki or for the other entities he owned, as well as business dealings done in disregard of the business entities.

The court held that Gurbacki exercised control over all of the corporations; therefore, the corporate entities should be disregarded in order to avoid injustice. Accordingly, the court found in Moss' favor as to the seventh cause of action (count 7) and the eighth cause of action (count 8) of the complaint, alleging piercing the corporate veil claims, as well as the successor liability claim alleged in the fifth cause of action (count 5). Judgment was entered against Gurbacki, AU, Relinco, C-Tek, and Roll the Bones, jointly and severally, in the amount of $396,082.48.

The appellants filed a motion to set a supersedeas bond, requesting that the district court set bond in the amount of $3,000. After holding a hearing on the motion, the court found that Gurbacki failed to prove that he was insolvent but that Moss met her burden of showing that Gurbacki was dissipating or diverting assets outside of the ordinary course of business

- 746 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

to avoid payment of a judgment. The court therefore determined that bond should be set at an amount sufficient to pay the judgment of \$396,082.48, estimated interest of \$27,000, and taxable court costs of approximately \$22,000. Thus, the appellants were ordered to pay a total supersedeas bond of \$445,000.

The appellants filed their notice of appeal, and as part of their appeal, they filed a motion to reduce the amount of the supersedeas bond. This court deducted the \$22,000 the district court had included as taxable court costs and reduced the total bond amount to \$423,000.

## ASSIGNMENTS OF ERROR

The appellants assign, restated and renumbered, that the district court erred in (1) awarding a monetary judgment in favor of Moss against AU; (2) finding Gurbacki is the alter ego of AU on count 7; (3) finding Relinco, C-Tek, and Roll the Bones are the alter egos of Gurbacki on count 7; (4) finding Relinco, C-Tek, and Roll the Bones are the alter egos of AU on count 8; (5) finding Relinco, C-Tek, Roll the Bones, and Gurbacki are successors of AU on count 5; (6) setting a supersedeas bond for Gurbacki in the amount of \$423,000; and (7) awarding Moss costs in the amount of \$22,000.

## STANDARD OF REVIEW

[1-3] Proceedings seeking disregard of a corporate entity, that is, piercing the corporate veil to impose liability on a shareholder for a corporation's debt or other obligation, are equitable actions. *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008). In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court. *Id*. Where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014).

- 747 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

## ANALYSIS

*Monetary Judgment Against AU.*

The appellants first argue that the district court erred in imposing a monetary judgment against AU. They claim that when considering the federal court judgment in Moss' favor and the judgment in the instant case, AU is now liable to Moss on two separate judgments. We disagree.

[4,5] As a general rule, a party may not have double recovery for a single injury, or be made more than whole by compensation which exceeds the actual damages sustained. *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998). Where several claims are asserted against several parties for redress of the same injury, only one satisfaction can be had. *Id*. However, since a party does not receive a double recovery until he or she has been made more than whole by damage payments, there can be no double recovery when a party has not fully recovered his or her losses. See *Blue Cross and Blue Shield v. Dailey*, 268 Neb. 733, 687 N.W.2d 689 (2004).

The rule against double recovery does not prevent entry of a second judgment, only double collection of the judgment. And in the present case, Moss has not recovered any damages from AU pursuant to the federal court judgment. The district court here held the appellants jointly and severally liable for the total judgment amount; thus, any or all of the appellants may be held liable for the entire damage. See *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006) (under joint and several liability, either tort-feasor may be held liable for entire damage). But Moss would not be permitted to recover more than the total amount of the judgment. Because Moss has not fully recovered her losses, there is no danger of double recovery at issue here, and there was nothing preventing the district court from entering judgment in her favor. We therefore reject this assigned error.

*Alter Ego and Piercing Corporate Veil.*

With regard to the corporate veil claims, the appellants assign that the district court erred in finding that Gurbacki

- 748 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

is the alter ego of AU on count 7; finding that Relinco, C-Tek, and Roll the Bones are the alter egos of Gurbacki on count 7; and finding that Relinco, C-Tek, and Roll the Bones are the alter egos of AU on count 8. The district court, however, did not make a finding that Relinco, C-Tek, and Roll the Bones are the alter egos of Gurbacki. Rather, the district court generally found in Moss' favor on count 7 and count 8 of the complaint. In count 7, she sought to pierce the corporate veil of AU and hold Gurbacki personally liable for the judgment against AU. In count 8, Moss alleged that the corporate defendants, either through Gurbacki or on their own, exercised control over the financial and business practices of one another and that in order "[t]o prevent the misuse of the corporate forms of the Corporate Defendants to commit fraud and promote injustice, the Corporate Defendants' corporate and LLC veils must be pierced to hold each Corporate Defendant individually liable for the debts and/or liabilities of the other Corporate Defendants to [Moss]." Based upon the evidence and theory presented at trial, we interpret this as a request to pierce the corporate veil of AU to hold the other corporate defendants liable. Thus, the question before us is whether the district court erred in finding that the corporate veil of AU should be pierced to hold Gurbacki personally liable and the other corporate defendants jointly and severally liable. We find no error in the court's decision.

[6-8] Generally, a corporation is viewed as a complete and separate entity from its shareholders and officers, who are not, as a rule, liable for the debts and obligations of the corporation. *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008). A court will disregard a corporation's identity only where the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another. *Id*. A corporation's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears. *Id*.

[9,10] A plaintiff seeking to pierce the corporate veil must allege and prove that the corporation was under the actual

- 749 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

control of the shareholder and that the shareholder exercised such control to commit a fraud or other wrong in contravention of the plaintiff's rights. *Id*. A plaintiff seeking to impose liability for a corporate debt on a shareholder has the burden to show by a preponderance of the evidence that the corporate identity must be disregarded to prevent fraud or injustice to the plaintiff. *Id*.

Some of the relevant factors in determining whether to disregard the corporate entity on the basis of fraud are (1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses, and (4) the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity. *Id*.

The first element of the test, inadequate capitalization, means capitalization very small in relation to the nature of the business of the corporation and the risks entailed. *Id*. Inadequate capitalization is measured at the time of incorporation. *Id*. A corporation which was adequately capitalized when formed but which has suffered losses is not necessarily undercapitalized *Id*. Undercapitalization presents a question of fact that turns on the nature of the business of the particular corporation. *Id*.

In the case at hand, the record does not establish any evidence regarding undercapitalization at the time AU was incorporated in 1979. However, in *United States Nat. Bank of Omaha v. Rupe*, 207 Neb. 131, 296 N.W.2d 474 (1980), the Nebraska Supreme Court noted that the corporation was grossly undercapitalized when the sole shareholder acquired it. Here, Gurbacki acquired AU in 2007. Best testified that as of June 15, 2015, when Moss obtained her judgment, AU "was grossly inadequately capitalized." He admitted, however, that he did not have an opinion as to the corporation's status as of 2007. There was no evidence as to AU's capitalization at the time it was formed, and other than requiring unconventional

- 750 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

financing when purchased and being refinanced shortly thereafter, there was no evidence as to the corporation's capitalization status as of 2007. Therefore, while we agree AU was undercapitalized as of 2015, we conclude that the district court's finding that AU was undercapitalized "at all relevant times" was in error.

The second factor used to determine whether a corporation's identity should be disregarded is whether the corporation was insolvent at the time the debt was incurred. *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008). A corporation is insolvent if it is unable to pay its debts as they become due in the usual course of its business, or if it has an excess of liabilities of the corporation over its assets at a fair valuation. *Id*. Whether a corporation is insolvent is usually a question of fact. *Id*. Here, it is undisputed that AU was insolvent in June 2015 when Moss obtained judgment against it. At trial, Gurbacki admitted that AU was insolvent at that time and that its debts exceeded its assets because of the Security State Bank loan. According to Best, at that time, AU's liabilities exceeded its assets by more than $4 million.

The third factor of the test to determine whether the corporate veil should be pierced is evidence of a diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses. *Id*. When a principal shareholder appropriates and uses corporate funds and property for his personal purposes and thereby defrauds and causes damages to creditors, the shareholder can be held individually liable for corporate debt. *Id*.

In *Carpenter Paper Co. v. Lakin Meat Processors*, 231 Neb. 93, 435 N.W.2d 179 (1989), the Supreme Court held that Lakin Meat Processors, Inc., was a mere corporate shell, an alter ego of Charles E. Lakin, the majority shareholder, and that it must therefore disregard the corporate entity. In reaching this conclusion, the court noted that Lakin controlled the corporation's every move and ran it as he saw fit and that the claimed separate identity was simply a series of complicated and innovative books and accounts. The Supreme Court found that

- 751 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

there was a unity of interest as far as Lakin and Lakin Meat Processors were concerned and reiterated that the separate entity concept of the corporation may be disregarded where the corporation is a mere shell, serving no legitimate business purpose, and is used as an intermediary to perpetuate fraud on the creditors. The Supreme Court concluded that Lakin's manipulations of the business permitted him to, and he did, terminate the corporation for his own financial well-being to the prejudice of the corporation's creditors.

Likewise, in the instant case, Gurbacki was in control of the corporations and there are multiple instances where Gurbacki used AU's assets for his personal benefit. The evidence establishes that Roll the Bones secured a loan in 2008 in order to purchase a parcel of land. AU and Gurbacki, individually, guaranteed the note. The loan was refinanced in 2013. AU made payments on the note for Roll the Bones, and AU paid the deficiency after the land was sold in a foreclosure sale, without receiving any benefit from Roll the Bones. Gurbacki admitted that AU made the $500 per month payments for a while because it had guaranteed the note. Using AU's assets to pay Roll the Bones' obligation resulted in a personal benefit to Gurbacki, because he could have been held personally liable on the guarantee if Roll the Bones defaulted on its note.

In addition, Best testified that the general ledger of C-Tek for the year ending December 31, 2018, showed more than 60 transactions in which AU was paying the expenses of or making payments on notes for C-Tek without receiving any benefit in return. Best testified that typically a corporation that is considered a separate entity does not pay the expenses of another entity and certainly does not make loan payments for that entity. Best further explained that the forbearance agreement, through which the Security State Bank loan was satisfied by using assets of C-Tek to the benefit of AU, was also a personal benefit to Gurbacki because he was a personal guarantor on that loan, and after the $800,000 was paid using funds from AU and C-Tek, Gurbacki was released from any obligation on the note.

- 752 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

Finally, if the corporation is a facade for the personal deal-ings of the shareholder and the operations of the corporation are carried on by the shareholder in disregard of the corporate entity, the shareholder may be individually liable for corpo-rate debt. *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008). The separate entity concept of the corporation may be disregarded where the corporation is a mere shell, serving no legitimate business purpose, and is used as an intermediary to perpetuate fraud on the creditors. *Id*.

Here, it is clear that Gurbacki was in control of AU, Relinco, C-Tek, and Roll the Bones. With regard to control, the appel-lants argue only that Gurbacki did not exercise control over C-Tek after January 2016. Thus, we need not discuss Gurbacki's control over C-Tek prior to that date or his control over the other corporations. And despite the fact that Gurbacki was no longer a shareholder of C-Tek after January 2016, we conclude that he continued to exercise control over the financial deci-sions of the company.

Gurbacki's wife testified multiple times that Gurbacki han-dled all of the financial aspects of C-Tek. Further, at the time of trial, Gurbacki was driving a luxury vehicle provided by C-Tek, despite the fact that he no longer had any ownership in the corporation, and his wife was unsure of the details of the transaction, other than that he had had the vehicle for less than 3 years. At trial, Gurbacki was asked whether he was the one who made the financial decisions for C-Tek, and he responded that he worked with accountants and professional services for C-Tek, but that he and his wife would discuss the decisions and would talk about it "to this day."

Significantly, according to Best, from a general accounting principle and best business practices point of view, the cor-porations did not treat each other as separate entities. He testified that there was an inordinate number of intercompany transactions and that in his 40 years of work, he had never seen commingling of accounts, interdependency of one entity on the operations of another entity, and interrelationship of companies the way he saw here. He said there were companies

- 753 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

making payments for other companies, assets being recorded in the books of one account and being transferred to another account, and the booking of intercompany receivables and payables. Then, when AU ultimately sold its assets to Farmers National Company, there were significant remaining balances in those intercompany accounts, so those companies were never made whole in respect to what they should have received from AU or what AU should have received from the other companies.

Specifically, AU paid off a note payable for C-Tek, made loan payments and credit card payments for C-Tek, and paid accounting and advertising expenses for C-Tek. Similarly, AU made note payments for Roll the Bones and paid certain expenses for Roll the Bones, including commissions and legal and accounting fees. Best explained that the corporations could claim to be separate entities, but they did not treat themselves that way. He pointed to the Security State Bank loan, where the assets of Relinco were pledged and then C-Tek was added as a guarantor on the note, to prevent AU from defaulting on the note and leaving the obligation to Gurbacki personally.

[11] We recognize that Best's testimony was contradicted by the testimony of Kenedy. According to Kenedy, it is common to see intercompany transactions and the evidence here did not prove the commingling of assets. However, all conflicts in the evidence, expert or lay, and the credibility of the witnesses are for the fact finder and not for the appellate court. See *Pierce v. Landmark Mgmt. Group*, 293 Neb. 890, 880 N.W.2d 885 (2016). Although the district court's order did not mention Best by name in its findings, the court's findings were more consistent with Best's opinions than Kenedy's; we therefore give weight to the district court's assessment of the witnesses and give weight to Best's opinions. Accordingly, when considering the evidence presented at trial, we conclude that three of the four factors set forth in *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008), are met here. As a result, the district court did not err in piercing the corporate veil of AU to hold Gurbacki liable for the judgment against AU.

- 754 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

[12,13] The appellants also challenge the district court's decision to hold Relinco, C-Tek, and Roll the Bones liable for AU's judgment. They argue that they were unable to locate a case in which the Nebraska courts have imposed liability between sister corporations, a concept known as horizontal veil piercing. One court has defined horizontal veil piercing as occurring when a limited liability entity is considered to be the alter ego of another limited liability entity with the same owner. See *In re Petters Company, Inc.*, 561 B.R. 738 (D. Minn. 2016). In this situation, a creditor with a claim against one of the limited liability entities seeks to disregard corporate separateness between the entities to reach assets belonging to both. *Id.*

Although not referring to this concept by name, the Supreme Court referenced such a situation in *Hayes v. Sanitary & Improvement Dist. No. 194*, 196 Neb. 653, 664, 244 N.W.2d 505, 511-12 (1976), stating that

> "the notion of separate corporate existence of parent and subsidiary *or affiliated corporations* will not be recognized where one corporation is so organized and controlled and its business conducted in such a manner as to make it merely an agency, instrumentality, adjunct, or alter ego of another corporation. The fiction of separate corporate identity of two corporations will not be extended to permit one of the corporations to evade its just obligations or to promote fraud or illegality or injustice."

(Emphasis supplied.)

In *Graham Graphics v. Baer Mktg. Internat.*, 10 Neb. App. 382, 631 N.W.2d 550 (2001), this court relied on the above-quoted language to hold a corporation liable for the debt of a related corporation. The debtor was a subsidiary of the defendant Baer Marketing International, Inc. According to Baer Baer Marketing International, the proper defendant was actually an affiliated corporation, Baer Imports, Inc.; thus, the focus of our inquiry was which sister corporation was the proper defendant. In affirming the trial court's decision, we highlighted that

- 755 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

the same company and same nucleus of individuals controlled Baer Marketing International and Baer Imports and concluded that the corporations were so closely tied and the management and financing so commingled that following the corporate form as Baer Marketing International suggested would lead to injustice. *Id*.

Similarly, in the present case, Gurbacki controlled AU, Relinco, C-Tek, and Roll the Bones. As discussed above, he intermixed and commingled the assets of the corporations, and their assets were used to benefit Gurbacki, personally, and each other. Gurbacki disregarded the corporate entities; thus, following the corporate form now to the detriment of Moss would lead to injustice. Accordingly, the district court did not err in holding Relinco, C-Tek, and Roll the Bones liable for the judgment against AU.

[14] Having concluded that the district court did not err in its findings regarding piercing the corporate veil, we need not consider whether the court's decision regarding successor liability was erroneous. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

*Supersedeas Bond and Costs.*

In their final assignments of error, the appellants assert that the district court erred in setting a supersedeas bond for Gurbacki in the amount of $423,000 and awarding Moss costs in the amount of $22,000. With respect to the amount of the supersedeas bond, the appellants challenge the district court's factual finding under Neb. Rev. Stat. § 25-1916(1) (Reissue 2016) that Gurbacki was dissipating or diverting assets outside the ordinary course of business to avoid the payment of a judgment. Given that we have now resolved the appeal, however, the issue of the proper amount of a supersedeas bond has become moot. See *McCullough v. McCullough*, 299 Neb. 719, 736, 910 N.W.2d 515, 528 (2018) ("[b]ecause we have resolved the appeal the order sought to be stayed, the setting

- 756 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

of the supersedeas bond is a moot issue . . . , and we need not review the district court's finding of fact").

The appellants also seek a final ruling regarding the amount of taxable court costs the district court required them to pay. As indicated above, as part of their appeal, the appellants filed a motion to reduce the amount of the supersedeas bond, and this court deducted the $22,000 the district court had included as taxable court costs.

[15] When the district court sets the amount of a supersedeas bond, the court may include in its calculations "the taxable court costs in the district court" and "estimated amount of the costs of appeal." § 25-1916(1)(a). The decision of a trial court regarding taxing of costs is reviewed for an abuse of discretion. *City of Falls City v. Nebraska Mun. Power Pool*, 281 Neb. 230, 795 N.W.2d 256 (2011).

[16] The Supreme Court has held that costs of litigation and expenses incident to litigation may not be recovered unless provided for by statute or a uniform course of procedure. *Id.* Applying this principle, the Supreme Court has held that expert witness fees and expenses of making copies of depositions and enlargements of exhibits are not taxable court costs. See *id*. Similarly, this court has applied this principle in holding that photocopy, fax, and postage expenses are not taxable costs. See *In re Estate of Snover*, 4 Neb. App. 533, 546 N.W.2d 341 (1996).

In the instant case, at the hearing, counsel for Moss entered into evidence his own affidavit. In that affidavit, counsel asserted that Moss "has incurred approximately $22,500.00 in fees and expenses." Attached to the affidavit as an exhibit is a list of fees and costs incurred by Moss from October 2016, when her complaint was filed, to December 2018, just after the trial. These costs include expert witness fees, photocopy and postage expenses, and deposition costs. The district court included $22,000 in taxable court costs in its calculation of Gurbacki's supersedeas bond. Because expert witness fees and photocopy, fax, and postage expenses are not taxable costs, the record does not support an inclusion of these costs in the

- 757 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
MOSS v. ASSOCIATED UNDERWRITERS
Cite as 28 Neb. App. 739

amount awarded. Accordingly, the district court abused its discretion in awarding Moss $22,000 in taxable costs, and we reverse the judgment in that regard.

## CONCLUSION

We conclude that the district court abused its discretion in awarding $22,000 in taxable costs to Moss. The court did not err in piercing the corporate veil to hold the appellants liable for the judgment against AU, so the district court's judgment is otherwise affirmed.

Affirmed in part, and in part reversed.